EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Trabajo Asociado de Servicios de Asesoría y Asistencia Legal y Notarial (Legal Coop.)<br><br>Peticionario<br><br>v.<br><br>Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC), representado por su Presidenta Ejecutiva Mabel Jiménez Miranda<br><br>Recurridos | Certiorari<br><br>2024 TSPR 34<br><br>213 DPR ___ |

Número del Caso: CC-2023-0158

Fecha: 12 de abril de 2024

Tribunal de Apelaciones:

    Panel VI

Abogados de la parte peticionaria:

    Lcdo. Ariel O. Caro Pérez
    Lcdo. Miguel A. Pérez Vargas
    Lcdo. Rubén Colón Morales
    Lcdo. Rubén J. Lucena Quiles

Abogados de la parte recurrida:

    Lcda. Leila A. Marrero Maldonado
    Lcdo. Michael R. Jiménez Brea

Abogados de los *Amicii Curiae*:

**Colegio de Abogados y Abogadas de Puerto Rico**

    Lcdo. Juan Enrique Santana Felix
    Lcda. Carmen Julia Ortiz

**Liga de Cooperativas de Puerto Rico**

    Lcda. Irma N. Torres Suárez

Materia: Derecho Cooperativo – Facultad de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico para regular y fiscalizar una entidad una vez esta se incorpora como cooperativa.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Trabajo Asociado
de Servicios de Asesoría y
Asistencia Legal y Notarial
(Legal Coop.)

    Peticionario

      v.                     CC-2023-0158     *Certiorari*

Corporación Pública para la
Supervisión y Seguro de
Cooperativas de Puerto Rico
(COSSEC), representado por su
Presidenta Ejecutiva Mabel
Jiménez Miranda

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 12 de abril de 2024.

En el presente caso tenemos la oportunidad de expresarnos, por vez primera, sobre las facultades que tiene la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (en adelante, "COSSEC") en el proceso de incorporación de cooperativas de tipos diversos. En específico, debemos determinar si COSSEC puede denegar a una cooperativa de tipo diverso un permiso para operar, cuando ésta ya ha obtenido dicha autorización de la Comisión de Desarrollo Cooperativo de Puerto Rico (en adelante, "CDCOOP") y del Departamento de Estado.

Adelantamos que, tras un análisis cuidadoso y detallado del ordenamiento cooperativista puertorriqueño, hemos llegado a la conclusión de que COSSEC no tiene facultad para denegar el permiso de operación a una cooperativa de tipo diverso, cuando CDCOOP y el Departamento de Estado previamente han autorizado su incorporación. Más bien, COSSEC solo tiene facultad para regular y fiscalizar la entidad, una vez ésta se incorpore como cooperativa. Veamos.

I.

La Cooperativa de Trabajo Asociado de Servicios de Asesoría y Asistencia Legal Notarial (en adelante, "Legal Coop") es una entidad que, a grandes rasgos, ofrece asesoría, asistencia y representación legal, y servicios notariales, a empresas cooperativas y de la economía solidaria.[1] En particular, la referida entidad se organizó como una cooperativa de trabajo asociado de conformidad con la Ley Núm. 239-2004, también conocida como la Ley General de Sociedades Cooperativas de Puerto Rico de 2004 (en adelante, "Ley General de Cooperativas de 2004"), *infra.*

Según requiere dicho estatuto, Legal Coop sometió sus documentos de incorporación a CDCOOP. Luego de examinar los mismos, CDCOOP los refirió al Departamento de Estado para que procediera con el registro de las cláusulas de incorporación y con la expedición del correspondiente certificado de incorporación. Completado dicho proceso,

---

[1] Véase, *Cláusulas de incorporación*, Apéndice de *Petición de certiorari*, pág. 182.

Legal Coop fue incorporada como cooperativa el 17 de junio de 2020, bajo el número 445582.

Para esa misma fecha, CDCOOP le notificó a COSSEC sobre la incorporación de Legal Coop. Asimismo, le remitió copia de las Cláusulas de Incorporación, el Reglamento y del *Certificado de incorporación* de la referida cooperativa. Lo anterior tenía la finalidad de que COSSEC otorgara a Legal Coop un permiso para comenzar a operar, conforme al Art. 37.0 de la Ley General de Cooperativas de 2004, *infra*.

Así las cosas, recibidos los mencionados documentos de incorporación, COSSEC procedió a examinarlos. Como parte del referido examen, el 10 de mayo de 2021 la mencionada entidad se comunicó con Legal Coop con el propósito de indagar sobre una cuenta bancaria de la cooperativa que, para el 31 de diciembre de 2020, contenía un balance de $140,783.72.

Por su parte, el 11 de mayo de 2021 Legal Coop remitió un escrito mediante el cual explicó que, como parte de sus operaciones y registros contables, se realizaban anticipos de dividendos a los socios. Estos anticipos, según indicó, se registraban en dicha cuenta.

Recibida la referida misiva, el 29 de junio de 2021 COSSEC se comunicó con Legal Coop para notificarle que el asunto de los anticipos constituía un incumplimiento con el Art. 21.0 de la Ley General de Cooperativas de 2004, *infra*. Adujo esto, puesto que dicho estatuto no establece o permite que las cooperativas realicen adelantos de dividendos a sus socios.

Así pues, y en vista de lo anterior, COSSEC le requirió a Legal Coop realizar un análisis de sus registros y procedimientos, con la finalidad de asegurar que su contabilidad estuviese libre de errores y en cumplimiento con la ley. Para acreditar el cumplimiento con lo requerido, solicitó que se proveyeran los estados financieros de la entidad al 31 de diciembre de 2020. A su vez, COSSEC le notificó a la referida cooperativa que le otorgaría un permiso provisional para operar, -- por un término de treinta (30) días --, mientras se cumplía con lo señalado.

En desacuerdo con lo requerido a ésta, el 9 de julio de 2021 Legal Coop replicó a la comunicación antes mencionada. En esencia, argumentó que el presunto incumplimiento con la ley, -- por efectuar adelantos de dividendos a los socios como mecanismo de pago por los servicios prestados por éstos --, no aplicaba a cooperativas de trabajo asociado.

Legal Coop fundamentó su posición en que los socios trabajadores de este tipo de cooperativas no son empleados *per se*, sino que son dueños. Por ello, explicó que no era posible dar tratamiento de salario al pago por los servicios que realiza un socio. Más bien, adujo que ese pago es un adelanto o anticipo de los dividendos a los que tendría derecho dicho socio en su día.

Evaluados los planteamientos de Legal Coop, el 26 de agosto de 2021 COSSEC emitió su determinación de no otorgarle el permiso para operar. Según su criterio, la Ley General de Cooperativas de 2004, *infra*, permite que un socio sea

empleado o contratista independiente, y que, como tal, reciba un salario o una compensación por sus labores, mas no así adelantos o anticipos de dividendos.

Además, la referida entidad explicó que el mencionado estatuto no define los términos de ganancia ni de dividendo, sino que solamente atiende el proceso para distribuir los sobrantes de la cooperativa. Dichos sobrantes, según la ley, se manejan al cierre del año fiscal.

En ese sentido, concluyó que era especulativo hablar de dividendos antes de ese momento. Así las cosas, le otorgó a Legal Coop un término de treinta (30) días para corregir la deficiencia indicada.

Posteriormente, el 23 de septiembre de 2021 Legal Coop presentó una *Solicitud de reconsideración*. Mediante dicha comunicación, la referida cooperativa se sostuvo en su posición.

En síntesis, Legal Coop explicó que la Ley General de Cooperativas de 2004, *infra*, distingue entre socios trabajadores y trabajadores no socios. A su entender, son estos últimos los que desempeñan labores a cambio de un salario. Conforme a ello, precisó que el mecanismo de anticipos se utiliza para remunerar a los socios trabajadores por sus servicios.

Evaluada la *Solicitud de reconsideración*, el 7 de octubre de 2021 COSSEC emitió una *Resolución* mediante la cual declaró no ha lugar la misma. En ésta, informó a Legal Coop

sobre su derecho a revisar la determinación ante la Junta de Directores de COSSEC y el Tribunal de Apelaciones.

Enterada de lo anterior, el 23 de noviembre de 2021 Legal Coop presentó una *Solicitud de revisión de determinación* ante la Junta de Directores de COSSEC. En ésta, esbozó los mismos argumentos presentados en su solicitud de reconsideración.

Así las cosas, el 24 de enero de 2022 la Junta de Directores de COSSEC emitió una *Resolución* mediante la cual declaró no ha lugar la solicitud presentada por Legal Coop. Esto, por entender que no tenía jurisdicción para atenderla.

A juicio de la Junta de Directores de COSSEC, ni la carta del 26 de agosto de 2021, ni la *Resolución* del 7 de octubre del mismo año, constituían determinaciones administrativas finales por parte de COSSEC en cuanto a la otorgación del permiso para operar. Así pues, concluyó que la revisión presentada era prematura y devolvió el caso ante la consideración de la Presidencia Ejecutiva de COSSEC para que emitiera la determinación correspondiente.

La Presidencia Ejecutiva de COSSEC, por su parte, emitió una comunicación por escrito el 18 de abril de 2022 dirigida a la Junta de Directores de la mencionada entidad. En ésta, sostuvo su determinación de no otorgar el permiso de operación a Legal Coop, por entender que la referida cooperativa incumplía con varios asuntos, a saber: (1) los requisitos establecidos en la ley; (2) su propio reglamento interno; y (3) con mantener un sistema de contabilidad

adecuado al reconocer el adelanto de dividendos antes del cierre del año fiscal. Para fundamentar su posición, COSSEC se basó en la Ley General de Cooperativas de 2004, *infra*, y en el Reglamento Núm. 7108, *infra*, de la extinta Oficina del Inspector de Cooperativas de Puerto Rico (en adelante, "Oficina del Inspector de Cooperativas").

Enterada de lo anterior, el 12 de mayo de 2022 Legal Coop presentó una segunda *Solicitud de reconsideración* ante COSSEC. Además de reiterar sus argumentos originales, señaló que la determinación de la mencionada entidad, de denegar el permiso por presuntamente incumplir con ciertos requisitos establecidos en ley, constituía un acto *ultra vires*.

**Según el análisis de Legal Coop, la Ley General de Cooperativas de 2004, *infra*, no le reconoce a COSSEC ninguna autoridad para revocar la determinación de CDCOOP respecto a que una entidad cumple con los requisitos para constituirse como una cooperativa. Más bien, su rol se limita a asegurar que, prospectivamente, la cooperativa se mantenga en cumplimiento con la ley.**

Así las cosas, el 19 de mayo de 2022 COSSEC emitió una *Resolución* mediante la cual declaró no ha lugar la referida petición de reconsideración. A su entender, la referida cooperativa no presentó argumentos que le movieran a variar su dictamen.

Inconforme con dicho proceder, el 21 de junio de 2022 Legal Coop acudió mediante *Solicitud de revisión* ante la Junta de Directores de COSSEC. En esencia, esbozó argumentos

similares a los mencionados en la *Solicitud de reconsideración* del 12 de mayo de 2022.

A su vez, la referida cooperativa hizo hincapié en que, en virtud de la Ley Núm. 247-2008, también conocida como la Ley Orgánica de la Comisión de Desarrollo Cooperativo de Puerto Rico, *infra*, (en adelante, "Ley de la Comisión de Desarrollo Cooperativo"), COSSEC se convirtió en una entidad subordinada a CDCOOP. En ese sentido, argumentó que la Ley General de Cooperativas de 2004, *infra*, no le reconoce discreción a COSSEC para impedir que una cooperativa, debidamente incorporada, comience operaciones.

Evaluada la *Solicitud de revisión* presentada por Legal Coop, el 30 de agosto de 2022 la Junta de Directores emitió una *Resolución* mediante la cual la declaró no ha lugar. Dicho cuerpo se limitó a adoptar el contenido de la determinación administrativa emitida por COSSEC el 18 de abril de 2022.

Inconforme aún, el 15 de septiembre de 2022 Legal Coop presentó una *Moción de reconsideración* ante la Junta de Directores de COSSEC. En síntesis, la referida cooperativa se sostuvo en que: (1) la relación laboral entre una cooperativa de trabajo asociado y sus socios trabajadores no es de empleo ni de contratistas independientes, por lo que el pago mediante anticipos es permitido; y en que (2) COSSEC carece de autoridad para denegar un permiso para iniciar operaciones a una cooperativa de tipo diverso, cuando CDCOOP ya lo ha autorizado.

En el ínterin, y previo a resolver la *Moción de reconsideración* a la que hemos hecho referencia, COSSEC emitió en contra de Legal Coop una *Orden de cese y desista* de naturaleza sumaria. Luego de realizar un breve recuento de los hechos del caso, la mencionada entidad adujo que Legal Coop estaba compareciendo como cooperativa ante foros judiciales y administrativos, a pesar de no tener permiso para operar.

A tenor con lo anterior, COSSEC le solicitó a Legal Coop que cesara y desistiera de operar como una cooperativa. A su vez, le requirió que notificara a todos sus clientes que no contaba con el permiso para operar y, por consiguiente, estaba impedida de ofrecer servicios como cooperativa.

En desacuerdo con ello, el 11 de octubre de 2022 Legal Coop acudió al Tribunal de Apelaciones mediante un recurso de *Revisión judicial*. Ante dicho foro, la referida cooperativa cuestionó nuevamente la autoridad de COSSEC para denegar la concesión del permiso para operar.

De igual forma, alegó ante el foro apelativo intermedio que COSSEC había errado al concluir que los anticipos de ganancias sobre trabajos no están contemplados por la Ley General de Cooperativas de 2004, *infra*, y que los socios de la cooperativa tienen que vincularse laboralmente mediante contratos de empleo y no como socios trabajadores.

Evaluados los alegatos presentados por ambas partes, el 17 de noviembre de 2022 el Tribunal de Apelaciones dictó *Sentencia* mediante la cual confirmó la determinación

administrativa. Al así hacerlo, en primer lugar, el foro apelativo intermedio distinguió entre el proceso del registro de las cláusulas de incorporación de una cooperativa en el Departamento de Estado, y el proceso posterior de la concesión del permiso para operar por parte de COSSEC. En ese sentido, explicó que COSSEC era la entidad encargada de analizar si procede o no que se otorgue el permiso para operar a una cooperativa.

Por otra parte, el Tribunal de Apelaciones también entendió que la Ley General de Cooperativas de 2004, *infra*, no provee para el adelanto de dividendos como parte de la compensación de trabajo. Sin embargo, concluyó que el error señalado había sido planteado por primera vez ante dicho foro, en vista de que, en los documentos sometidos durante el trámite administrativo, Legal Coop hacía referencia a adelantos de dividendos y no a adelantos de ganancias, por lo que decidió no atender ese asunto.

Por último, el foro apelativo intermedio tampoco se adentró en el asunto de cómo se vinculan los socios trabajadores en cooperativas de trabajo asociado. Ello, por entender que el dictamen administrativo recurrido no había abarcado tal asunto.

En desacuerdo con lo sentenciado por el Tribunal de Apelaciones, el 2 de diciembre de 2022 Legal Coop presentó una *Moción de reconsideración*. Dicha moción fue denegada por el foro apelativo intermedio el 6 de febrero de 2023.

Inconforme todavía, el 7 de marzo de 2023 Legal Coop sometió una *Petición de certiorari* ante este Tribunal. Mediante dicho recurso, plantea argumentos similares a los alegados ante los foros administrativos y el Tribunal de Apelaciones.

En extrema síntesis, Legal Coop insiste en la falta de autoridad de COSSEC para realizar las actuaciones cuestionadas, a saber: (1) denegar el permiso para operar a una cooperativa de tipo diverso, y (2) prohibir la práctica de remunerar a los socios trabajadores mediante anticipos de dividendos.

Por otro lado, el 13 de julio de 2023 compareció COSSEC mediante su *Alegato en oposición*. En esencia, dicha parte reafirma su autoridad para supervisar las cooperativas de tipos diversos.

En particular, para COSSEC, dicha autoridad incluye la concesión o denegatoria de permisos de operación. Sobre el asunto de los dividendos, se sostiene en que la Ley General de Cooperativas de 2004, *infra*, no provee para sus adelantos como parte de la compensación por el trabajo realizado por socios.

Cabe destacar que el 10 de marzo de 2023 compareció ante nos el Colegio de Abogados y Abogadas de Puerto Rico (en adelante, "CAAPR"), mediante una *Petición para comparecer como amicus curiae*. Asimismo, el 20 de marzo de 2023, compareció la Liga de Cooperativas de Puerto Rico (en

adelante, "Liga de Cooperativas")[2] mediante una *Moción para comparecer como amicus curiae*. Ambas solicitudes fueron autorizadas por este Tribunal el 28 de abril de 2023.

En esencia, ambas entidades consideran que COSSEC no tiene facultad supervisora en la etapa inicial de incorporación de una cooperativa de tipo diverso. Sobre el particular, indican que CDCOOP es la entidad a cargo de tal proceso. En vista de ello, concluyen que COSSEC no puede revocar la autorización para operar que nace al momento en que CDCOOP y el Departamento de Estado incorporan la nueva cooperativa.

Por otro lado, el CAAPR sostiene que la relación laboral entre la cooperativa de trabajo asociado y sus socios trabajadores no es de empleo ni de contratistas independientes. Por consiguiente, entiende que el mecanismo operacional aplicable para remunerar a dichos socios es el pago de anticipos y la repartición del remanente. La Liga de Cooperativas, por su parte, no se expresa sobre este asunto.

Trabada así la controversia, habiendo expedido el recurso presentado ante nos y con el beneficio de la comparecencia de todas las partes con interés en el litigio, así como de los *amicus curiae*, procedemos a exponer la

---

[2] La Liga de Cooperativas de Puerto Rico es la asociación de tercer grado del movimiento cooperativo puertorriqueño que agrupa a las cooperativas, federaciones y centrales de cooperativas organizadas bajo la Ley General de Cooperativas de 2004, *infra*, o bajo alguna otra ley de Puerto Rico. Véase, Art. 28.0, Ley General de Cooperativas de 2004, *infra*. Cabe mencionar que la Liga se considera la institución federativa de más alto nivel del Movimiento Cooperativo de Puerto Rico. Véase, Art. 4 (d)(10)(b), Ley de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Ahorro y Crédito, *infra*.

normativa que gobierna los asuntos ante nuestra consideración.

II.

A.

Como es sabido, el cooperativismo, en su acepción más simple, se refiere a "la asociación voluntaria y solidaria de personas que persiguen un fin común". *Cooperativa v. Colón Lebrón*, 203 DPR 812, 821 (2020). Este sistema socioeconómico se caracteriza, entre otras cosas, por: (1) el control democrático de sus personas socias; (2) la participación económica de éstas últimas en las ganancias de la entidad; y por (3) el compromiso o responsabilidad de la entidad con el desarrollo de su comunidad. Art. 3.1 de la Ley de Sociedades Cooperativas de 2004, *infra*; E. Pérez Riestra, *Cooperativismo en Puerto Rico y otros países: evolución y tendencias en el siglo XXI*, San Juan, Publicaciones Puertorriqueñas, Inc., 2012, pág. 132; L. Flores Soto, *Luz y Sombra: El Umbral Socio-Económico y Jurídico Del Cooperativismo*, 1 Rev. Clave 241, 243 (2006).

Cónsono con lo anterior, las cooperativas se consideran "personas jurídicas privadas de interés social, fundadas en la solidaridad y el esfuerzo propio para realizar actividades económico-sociales, con el propósito de satisfacer necesidades individuales y colectivas, sin ánimo de lucro". Art. 3.0 de la Ley de Sociedades Cooperativas de 2004, *infra*. Por su naturaleza, "[l]os beneficios y riesgos de la empresa se comparten en común, repartiéndose los sobrantes en

proporción al volumen de transacciones que cada socio haya realizado con la entidad". A. Parrilla-Bonilla, *Cooperativismo: Teoría y Práctica, España, Editorial Universitaria,* 1971, pág. 227.

B.

En Puerto Rico, la existencia de cooperativas data del 1873. Parrilla-Bonilla, *op. cit.,* págs. 262-264; I.M. Berlingeri Vincenty & E. Pérez Gutiérrez, *El Modelo Cooperativo de Mondragón y su aplicación a la situación de Puerto Rico*, 62 Rev. Jur. UPR 581, 585-587 (1993); L. Flores Soto, *Luz y Sombra: El Umbral Socio-Económico y Jurídico del Cooperativismo*, 1 Rev. Clave 241, 256 (2006). Ello, principalmente, es por razón de que, para esa fecha, "el gobierno español emitió un decreto que establecía el derecho a la asociación". Pérez Riestra, *op. cit.*, pág. 75.

Las primeras cooperativas establecidas en el archipiélago buscaban mejorar las condiciones de vida de la sociedad puertorriqueña de entonces. *Íd.* pág. 78; Parrilla-Bonilla, *op. cit.*, págs. 262-263. En ese sentido, ofrecían beneficios principalmente a la clase obrera y a sus familiares. *Íd.* 76-78; Parrilla-Bonilla, *op. cit.*, págs. 263-264.

Así pues, a medida que las cooperativas proliferaron, nacieron en nuestra jurisdicción una serie de iniciativas legislativas dirigidas a la autorización y regulación de éstas. Las referidas iniciativas pueden dividirse en tres grandes grupos: "(1) la que autoriza su organización [(la de

la cooperativa)]; (2) la que crea autoridades gubernamentales para, promoverlas y/o fomentar su desarrollo y (3) la que asigna autoridades gubernamentales para supervisarlas".[3]

Dicho ello, cabe destacar aquí que, para algunos tipos de cooperativas, nuestra Asamblea Legislativa ha legislado de forma particular, como es el caso de las cooperativas de ahorro y crédito, las juveniles, las de energía, entre otras.[4] Véase, Ley Núm. 255-2002, Ley de Cooperativas de Ahorro y Crédito de 2002, *infra*; Ley 258-2018, Ley Especial de Cooperativas Juveniles, 18 LPRA sec. 1701 *et seq.*; y Ley Núm. 258-2018, Ley de las Cooperativas de Energía de Puerto Rico, 5 LPRA 4381, *et seq*. Los demás tipos de cooperativas se atienden mediante legislación general -- a saber, la Ley General de Sociedades Cooperativas de Puerto Rico de 2004, *infra* -- y se conocen como cooperativas de tipos diversos.[5] Sobre estas últimas es que versa el caso de autos.

C.

Y, precisamente, dentro del precitado esquema legal estamos llamados a determinar quién es el ente gubernamental encargado de conceder un permiso de operación a una cooperativa de tipo diverso: ¿COSSEC o CDCOOP?

---

[3]  Marco Jurídico, *Liga de Cooperativas de Puerto Rico*, https://liga.coop/marco-juridico/ (última visita, 12 de octubre de 2023).

[4] También se regulan de forma especial las cooperativas de seguros y el Banco Cooperativo de Puerto Rico. Véase, Capítulo 34 de la Ley Núm. 77 de 19 de junio de 1957, también conocida como el Código de Seguros, 26 LPRA secs. 3401-3423, y la Ley Núm. 88 de 21 de junio de 1966, también conocida como la Ley del Banco Cooperativo de Puerto Rico, 7 LPRA sec. 751 *et seq.*

[5] *Supra*, esc. 3.

Para arribar a la respuesta de esta interrogante, debemos comenzar por repasar las facultades que tenía la extinta Oficina del Inspector de Cooperativas. Hacemos esto toda vez que dicha oficina: (1) precede tanto a COSSEC, como a CDCOOP; (2) tuvo incumbencia, -- desde su creación hasta su disolución --, en el proceso de incorporación de cooperativas de tipos diversos; y (3) al ser disuelta, sus poderes fueron transferidos a COSSEC.

Sobre el particular precisa señalar aquí que fue la Ley Núm. 291-1946, también conocida como la Ley General de Sociedades Cooperativas (en adelante, "Ley General de Cooperativas de 1946"), 5 LPRA sec. 881 *et seq.* (ed. 1954), la primera pieza legislativa que dispuso la creación de todo tipo de cooperativas, Pérez Riestra, *op. cit.*, pág. 225; Parrilla-Bonilla, *op. cit.*, pág. 303, y la que trajo consigo la creación de la Oficina del Inspector de Cooperativas. Art. 18, Ley General de Cooperativas de 1946, 5 LPRA sec. 898 (ed. 1954). **En ese entonces, -- y distinto a como opera actualmente -- el Inspector o Inspectora de Cooperativas tenía una participación activa tanto en el proceso de incorporación de una cooperativa, como en su regulación y fiscalización después de incorporada.**

Sobre el proceso de incorporación, la disposición legal bajo estudio establecía que el Inspector o Inspectora de Cooperativas tenía la facultad de aprobar o rechazar las cláusulas de incorporación y el reglamento interno de la propuesta cooperativa. Art. 19(1), Ley General de

Cooperativas de 1946, 5 LPRA sec. 899 (ed. 1954). A su vez, tenía la autoridad para recomendar que se expidiera, o no, a favor de la misma, el certificado de registro por parte del Departamento de Estado. *Íd.*

Respecto a los poderes de regulación y fiscalización, la Ley General de Cooperativas de 1946, *supra*, establecía que el Inspector o Inspectora de Cooperativas debía velar porque las cooperativas cumpliesen con las disposiciones de ley, los reglamentos aplicables, sus cláusulas de incorporación, y con los fines y propósitos para los cuales habían sido organizadas. Art. 19(4), Ley General de Cooperativas de 1946, 5 LPRA sec. 899 (ed. 1954). A tales efectos, se le permitía recomendar al Secretario de Estado la cancelación del certificado de registro a una cooperativa cuando no fuese posible corregir alguna irregularidad señalada a ésta, o cuando la cooperativa se dedicase a negocios extraños a sus fines y propósitos. Art. 19(4)(c), Ley General de Cooperativas de 1946, 5 LPRA sec. 899 (ed. 1954).

En fin, la Oficina del Inspector de Cooperativas era el ente que tenía la "obligación legal de supervisar y fiscalizar las operaciones de todas las cooperativas organizadas en Puerto Rico". *Ortiz v. Coop. Ahorro y Crédito*, 120 DPR 253, 258 (1987). Asimismo, era la oficina encargada, -- junto con el Departamento de Estado --, del proceso de incorporación de nuevas cooperativas.

D.

Ahora bien, posteriormente, y en lo relacionado al tema que nos ocupa, se aprobó la Ley Núm. 50-1994, también conocida como la Ley General de Sociedades Cooperativas (en adelante, "Ley General de Cooperativas de 1994"), 5 LPRA 4001 *et seq.* (ed. 1997). Dicho estatuto derogó la aludida Ley General de Cooperativas de 1946, *supra*.

La Ley General de Cooperativas de 1994, *supra*, detalló el proceso relacionado a la incorporación de nuevas cooperativas y lo mantuvo bajo la dirección de la Oficina del Inspector de Cooperativas y del Departamento de Estado. Arts. 4.2 y 5.0, Ley General de Cooperativas de 1994, 5 LPRA secs. 4042 y 4050 (ed. 1997). Específicamente, se dispuso que el proceso relacionado a la incorporación de nuevas cooperativas iniciaba con la presentación de las cláusulas y el reglamento de la cooperativa ante la mencionada oficina, acompañados de un estudio de viabilidad económica y el comprobante de rentas internas. Art. 5.0, Ley General de Cooperativas de 1994, 5 LPRA sec. 4050 (ed. 1997).

Presentados los referidos documentos, el Inspector o Inspectora de Cooperativas debía examinar los mismos. Art. 5.1, Ley General de Cooperativas de 1994, 5 LPRA 4051 (ed. 1997). Si estos cumplían con todos los requisitos de ley, y ninguna de sus disposiciones contradecía las leyes de Puerto Rico, el Inspector o Inspectora de Cooperativas tenía que someterlos al Secretario de Estado, dentro de un término

prescriptivo de cuarenta y cinco (45) días hábiles desde la fecha de su radicación. *Íd.*

Sin embargo, y no empece a lo antes dicho, el Inspector o Inspectora de Cooperativas podía negarse a someter las cláusulas para su registro cuando concluyera que el grupo interesado en organizar la cooperativa no cumplía con los requisitos de la ley. Art. 5.2, Ley General de Cooperativas de 1994, 5 LPRA 4052 (ed. 1997). Ello ocurriría siempre que les notificara las deficiencias encontradas y expusiera las razones para su negativa. *Íd.*

En caso de que el Inspector o Inspectora de Cooperativas no emitiera una determinación dentro del término indicado, las personas interesadas en la incorporación de una cooperativa podían someter los documentos directamente al Departamento de Estado. Art. 5.3, Ley General de Cooperativas de 1994, 5 LPRA sec. 4053 (ed. 1997). En tales escenarios, el mencionado departamento gubernamental estaría encargado de radicar los documentos y expedir el correspondiente certificado de incorporación, luego de reconocer el debido cumplimiento con la ley. *Íd.*

**Una vez registradas las cláusulas de incorporación y emitido el referido certificado, la entidad solicitante quedaba debidamente constituida como cooperativa. Art. 5.4, Ley General de Cooperativas de 1994, 5 LPRA 4054 (ed. 1997). En esa misma línea, tan pronto el Departamento de Estado registrara las cláusulas de incorporación, la cooperativa estaba autorizada para comenzar, de forma oficial, sus**

**operaciones. Art. 5.5, Ley General de Cooperativas de 1994, 5 LPRA 4055 (ed. 1997).**

Por último, y en lo pertinente, el Subcapítulo 36 del estatuto identificaba a la Oficina del Inspector de Cooperativas como la agencia responsable de la regulación y fiscalización de las cooperativas. **En primera instancia, el Art. 36.0 establecía que el Inspector o Inspectora de Cooperativas debía "otorgar un permiso escrito a toda cooperativa que hubiese cumplido con los requisitos de [la Ley General de Cooperativas de 1994] para que pued[iese] comenzar sus operaciones". Ley General de Cooperativas de 1994, 5 LPRA 4360 (ed. 1997).**

Además de lo anterior, el Inspector o Inspectora de Cooperativas venía obligado a velar porque toda cooperativa cumpliese con sus cláusulas de incorporación, su reglamento interno y con las disposiciones de ley. Art. 36.1, Ley General de Cooperativas de 1994, 5 LPRA sec. 4361 (ed. 1997). De igual forma, tenía que examinar, al menos anualmente, las auditorías realizadas sobre las operaciones de toda cooperativa incorporada y funcionando en Puerto Rico. Art. 36.2, Ley General de Cooperativas de 1994, 5 LPRA sec. 4362 (ed. 1997).

E.

**Establecido lo anterior, cabe destacar que la Ley General de Cooperativas de 1994, *supra*, fue enmendada mediante la Ley Núm. 186-2001 (en adelante, "Ley Núm. 186-2001"). Entre otros cambios, dicha ley dispuso que los**

**procesos de incorporación de cooperativas, a partir de la aprobación de la referida pieza legislativa, se llevarían a cabo mediante la Administración de Fomento Cooperativo,[6] desplazando de esta función a la Oficina del Inspector de Cooperativas. Arts. 2, 4-8, Ley Núm. 186-2001. En suma, la Administración de Fomento Cooperativo se convirtió en la entidad a cargo de incorporar y regular los procesos iniciales de organización de una cooperativa.**

Así pues, con la aprobación de la Ley Núm. 286-2001, *supra,* y en cuanto al proceso de incorporación de cooperativas de tipos diversos se refiere, las facultades de la Oficina del Inspector de Cooperativas se fueron reduciendo. En particular, y tras la puesta en vigor de la mencionada pieza legislativa, sus poderes se centrarían en la fiscalización y regulación de las cooperativas ya incorporadas, mientras que sus facultades respecto al proceso de incorporación se limitarían a otorgar el referido permiso para operar.

F.

Posterior a ello, y pasados aproximadamente diez años desde la aprobación de la Ley General de Cooperativas de 1994, *supra*, se aprobó la Ley General de Cooperativas de 2004, 5 LPRA sec. 4381 nota *et seq.*, estatuto que, en la actualidad, atiende todo lo concerniente a las cooperativas de tipos diversos. Art. 1.2 (j), Ley General de Cooperativas

---

[6] La Administración de Fomento Cooperativo se creó con la finalidad de "promover, organizar y regular el funcionamiento de las cooperativas". Pérez Riestra, *op. cit.*, pág. 92.

de 2004, 5 LPRA sec. 4381. Dicho estatuto mantuvo el proceso de incorporación de nuevas cooperativas similar al dispuesto en la Ley General de Cooperativas de 1994, *supra*, según enmendada.

**Es decir, de conformidad con lo dispuesto en la Ley General de Cooperativas de 2004, *supra*, y en lo referente al proceso de incorporación de cooperativas, la Administración de Fomento era la entidad responsable de evaluar los documentos de incorporación y de referir los mismos -- de encontrar que estos cumplían con la ley -- al Departamento de Estado. Arts. 4.2, 5.0-5.4, Ley General de Cooperativas de 2004, 5 LPRA secs. 4402, 4410-4414 (ed. 2004). De igual forma, la cooperativa podía comenzar sus operaciones oficialmente cuando el Departamento de Estado hubiese registrado sus cláusulas de incorporación. Art. 5.5, Ley General de Cooperativas de 2004, 5 LPRA sec. 4415 (ed. 2004).**

A su vez, con la aprobación de la Ley General de Cooperativas de 2004, *supra*, se mantuvo el mencionado Subcapítulo 36,[7] sobre las facultades de regulación y fiscalización de la Oficina del Inspector de Cooperativas. Es decir, se conservó, entre otras disposiciones, el artículo referente al permiso que debía conceder el Inspector o Inspectora de Cooperativas a toda cooperativa que hubiese cumplido con las disposiciones de ley para comenzar

---

[7] Cabe destacar que, mediante la Ley Núm. 258-2018, este subcapítulo se renumeró, por lo que actualmente es el Subcapítulo 37.

operaciones. Art. 37, Ley General de Cooperativas de 2004, 5 LPRA sec. 4645 (ed. 2004).

G.

Dicho ello, conviene señalar aquí que, para el año 2006, mediante la Carta Normativa Núm. 2006-02-03 y en virtud de la Ley General de Cooperativas de 2004, *supra*, la Oficina del Inspector de Cooperativas promulgó el *Reglamento para la Otorgación de Permisos a las Cooperativas*, Reglamento Núm. 7108 de 17 de marzo de 2006 (en adelante, "Reglamento Núm. 7108").[8] El propósito de dicha normativa era establecer el proceso para otorgar el permiso para comenzar operaciones -- mencionado en el aludido Subcapítulo 36 de la Ley General de Cooperativas de 2004, *supra* -- por parte del Inspector o Inspectora de Cooperativas, y las causas para la suspensión o revocación del mismo. Reglamento Núm. 7108, Art. I, pág. 2.

**Según este reglamento, el certificado de registro emitido por el Departamento de Estado, en conformidad con el Art. 5.5 de la Ley General de Cooperativas de 2004, *supra*, no constituía el permiso para operar. Reglamento Núm. 7108, Art. IV, pág. 2. Más bien, y a juicio de dicha oficina, era el Inspector o Inspectora de Cooperativas quien otorgaba la autorización para ello. Reglamento Núm. 7108, Art. V, pág. 3.**

---

[8] *Reglamento para la Otorgación de Permisos a las Cooperativas*, Reglamento Núm. 7108 de 17 de marzo de 2006, disponible en: https://docs.pr.gov/files/COSSEC/Documentos%20Cooperativas/Reglamentos/7108.pdf.

Para conferir el referido permiso, se dispuso que el Inspector o Inspectora de Cooperativas debía examinar aspectos tales como el sistema de contabilidad de la cooperativa y el contenido de su reglamento interno. Reglamento Núm. 7108, Art. VIII, pág. 4. Mientras se efectuaba tal examen, se autorizaba a conceder un permiso provisional por un término no mayor de treinta (30) días. Reglamento Núm. 7108, Art. VII, págs. 3-4.

De culminar la evaluación de forma favorable, el Inspector o Inspectora de Cooperativas tenía que otorgar el permiso en un periodo no mayor de treinta (30) días. Reglamento Núm. 7108, Art. V, pág. 3. Por el contrario, si del examen realizado surgían señalamientos que impidieran conceder la autorización, se le otorgaría a la cooperativa un término no mayor de treinta (30) días para corregir los mismos. *Íd.*

Como se puede apreciar, mediante este *Reglamento*, la Oficina del Inspector de Cooperativas aclaró que una cooperativa, ya incorporada, venía obligada a esperar por el permiso de la Oficina del Inspector de Cooperativas para poder comenzar sus operaciones.

III.

A.

Abundando en nuestro análisis, y como hemos adelantado, la Oficina del Inspector de Cooperativas, en el año 2008, fue disuelta y sus funciones fueron transferidas a COSSEC. Ahora bien, antes de examinar en detalle dicha disolución,

debemos repasar lo relacionado a la creación y funciones de COSSEC. Para ello, es necesario hacer referencia, brevemente, a las disposiciones legales relacionadas a la creación e incorporación de las cooperativas de ahorro y crédito. Esto procede toda vez que, al momento de su constitución, COSSEC solo tenía autoridad sobre dichos tipos de cooperativas.

De entrada, cabe destacar que, desde el año 1947, Puerto Rico cuenta con legislación para "autorizar la incorporación, la organización y el funcionamiento de las cooperativas de ahorro y crédito". Pérez Riestra, *op. cit.*, pág. 89. Actualmente, el estatuto vigente es la Ley Núm. 255-2002, también conocida como la Ley de Sociedades Cooperativas de Ahorro y Crédito de 2002 (en adelante, "Ley de Cooperativas de Ahorro y Crédito de 2002"), 7 LPRA sec. 1361 nota *et seq.*

Previo a la creación de COSSEC, nuestra Asamblea Legislativa había aprobado varios estatutos para asegurar las acciones y depósitos de los socios de estas cooperativas contra pérdidas resultantes del riesgo de insolvencia. Entre dichas piezas legislativas estaban la Ley Núm. 99 de 4 de junio de 1980, también conocida como la Ley del Fondo de Seguro de Acciones y Depósitos de Cooperativas de Ahorro y Crédito (en adelante, "Ley del Seguro de Cooperativas de Ahorro y Crédito"), 7 LPRA sec. 1151 *et seq.* (derogada), y la Ley Núm. 5 de 15 de enero de 1990, también conocida como la Ley de la Corporación de Seguro de Acciones y Depósitos

de Cooperativas de Ahorro y Crédito (en adelante, "Ley de la Corporación de 1990"), 7 LPRA 1301 *et seq.* (ed. 1994).[9]

Varios años después, se aprobó la Ley Núm. 114-2001, también conocida como la Ley de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Ahorro y Crédito (en adelante, "Ley de la Corporación de 2001"), 7 LPRA sec. 1334 nota *et seq*. Dicho estatuto derogó la Ley de la Corporación de 1990, *supra*, y constituyó lo que hoy conocemos como COSSEC. Art. 4, Ley de la Corporación de 2001, 7 LPRA sec. 1334b.

**Mediante la creación de dicha corporación, se "centraliz[ó] en una sola institución la función de supervisar y asegurar a las cooperativas de ahorro y crédito". Pérez Riestra, *op. cit.*, pág. 235.** En otras palabras, COSSEC se convirtió en el ente responsable de proveer a las cooperativas de ahorro y crédito un seguro contra insolvencia, y, además, de supervisar y fiscalizar sus operaciones, negocios, productos y/o servicios. Art. 4(b)(1)-(2), Ley de la Corporación de 2001, 7 LPRA sec.

---

[9] En particular, la Ley del Seguro de Cooperativas de Ahorro y Crédito, *supra*, creó un programa que pretendía asegurar las acciones y depósitos de los socios de cooperativas de ahorro y crédito contra pérdidas resultantes del riesgo de insolvencia. Este programa operaba bajo la supervisión y dirección del Inspector o Inspectora de Cooperativas. Sec. 3, Ley del Seguro de Cooperativas de Ahorro y Crédito, 7 LPRA sec. 1151b (derogada). Por su parte, la Ley de la Corporación de 1990, *supra*, creó la Corporación de Seguro de Acciones y Depósitos de Cooperativas de Ahorro y Crédito (en adelante, "PROSAD-COOP"). Dicha corporación sustituyó el primer programa de seguro -- creado en virtud de la mencionada Ley del Seguro de Cooperativas de Ahorro y Crédito, *supra* -- por uno independiente. Exposición de Motivos, Ley de la Corporación de 1990, *supra*. En otras palabras, el seguro por insolvencia dejó de operar bajo la supervisión de la Oficina del Inspector de Cooperativas y pasó a manos de PROSAD-COOP.

1334b. Véase también, Art. 4(c)(1), Ley de la Corporación de 2001, 7 LPRA sec. 1334b.

Siendo ello así, desde la creación de COSSEC, la incorporación de cooperativas de ahorro y crédito, en nuestra jurisdicción, se tramita a través de dicha entidad. Art. 3.03, Ley de Cooperativas de Ahorro y Crédito de 2002, 7 LPRA sec. 1363b. Anterior a ello, el proceso se realizaba mediante la Oficina del Inspector de Cooperativas. Véase, Art. 3.03, 7 LPRA sec. 1353b, Ley Núm. 6 de 15 de enero de 1990, también conocida como Ley de Sociedades Cooperativas de Ahorro y Crédito de 1989 (derogada).

**De todo lo anterior podemos concluir, pues, que COSSEC se creó con la finalidad de ser el único ente con jurisdicción sobre las cooperativas de ahorro y crédito. Cónsono con ello, su alcance sobre las cooperativas de tipos diversos era -- y es -- limitado.**[10]

B.

Habiendo estudiado la norma relacionada a la extinta Oficina del Inspector de Cooperativas y a COSSEC, veamos ahora los cambios que, a la normativa antes discutida, trajo consigo la aprobación de la Ley de la Comisión de Desarrollo Cooperativo, 23 LPRA sec. 625 nota *et seq.* Como explicaremos más adelante, este estatuto constituyó a CDCOOP y modificó

---

[10] En específico, COSSEC solo tenía la responsabilidad de velar por la solvencia económica de estas cooperativas, y por los derechos y prerrogativas de sus personas socias. Art. 4(b)(4), Ley de la Corporación de 2001, 7 LPRA sec. 1334b.

significativamente parte del estado de derecho expuesto en los acápites anteriores.

En ese sentido, y según se desprende de la Exposición de Motivos del precitado estatuto, antes de su aprobación, en nuestra jurisdicción contábamos con una multiplicidad de entidades que regulaban las cooperativas. Exposición de Motivos, Ley de la Comisión de Desarrollo Cooperativo, *supra*. Específicamente, la Administración de Fomento Cooperativo y el Fondo de Inversión de Desarrollo Económico se encargaban de la promoción; la Oficina del Inspector de Cooperativas y COOSEC atendían la fiscalización y reglamentación; y el Instituto de Cooperativismo de la Universidad de Puerto Rico manejaba el tema educativo. *Íd.*

Así las cosas, en la referida Exposición de Motivos se expresó que dicha fragmentación causaba, entre otras problemáticas, que hubiese una "excesiva intervención gubernamental y un predominio de la función fiscalizadora en detrimento de la autonomía que caracteriza a las empresas cooperativas, así como de los esfuerzos de promoción y desarrollo social y económico". *Íd.* De igual forma, se señaló que las cooperativas venían obligadas a responder a diferentes departamentos gubernamentales. *Íd.*

**En vista de tales desafíos, mediante la Ley de la Comisión de Desarrollo Cooperativo, *supra*, se restructuró nuestro ordenamiento cooperativista. En lo pertinente, se creó CDCOOP; se armonizaron las funciones públicas de promoción y fiscalización; y se incorporó la participación**

activa del movimiento cooperativo puertorriqueño en los procesos de formulación e implementación de política pública. *Íd.*

En particular, a CDCOOP se le encomendó "delinear, promover, coordinar y supervisar la ejecución e implantación de la política pública sobre el desarrollo y fomento cooperativo de Puerto Rico". Art. 9, Ley de la Comisión de Desarrollo Cooperativo, 23 LPRA sec. 632. De igual forma, ésta se convirtió en el organismo responsable de definir, mediante reglamento, los parámetros que debe reunir y mantener una cooperativa para ser acreedora de una carta constitutiva de tal naturaleza. *Íd.* inciso (m).

Además, la ley estableció que tanto COSSEC, como el Fondo de Inversión y Desarrollo Cooperativo, funcionarían como entidades adscritas a CDCOOP. Art. 13, Ley de la Comisión de Desarrollo Cooperativo, 23 LPRA sec. 637(a). Conforme a ello, se dispuso que las determinaciones de dichas entidades que impliquen definir política pública tienen que ser cónsonas con la política pública de desarrollo del cooperativismo, según la defina e interprete la Junta Rectora de CDCOOP. *Íd.*

Como resultado de esto último, se le requirió a la Junta Rectora de CDCOOP coordinar e integrar las políticas y funcionamiento de las entidades adscritas. Art. 9(b) y (n), Ley de la Comisión de Desarrollo Cooperativo, 23 LPRA sec. 632. Igualmente, se le facultó para resolver posibles inconsistencias entre las normas, reglamentos,

procedimientos, cartas circulares o normativas de las entidades adscritas, y la política pública de desarrollo del cooperativismo. Art. 13, Ley de la Comisión de Desarrollo Cooperativo, 23 LPRA sec. 637(b).

En cuanto a la armonización de funciones públicas, es menester señalar que, con la aprobación de la Ley de la Comisión de Desarrollo Cooperativo, se disolvió tanto la Administración de Fomento, como la Oficina del Inspector de Cooperativas. A raíz de ello, se transfirieron todas las funciones y poderes de la Administración de Fomento a CDCOOP. Art. 14, Ley de la Comisión de Desarrollo Cooperativo, 23 LPRA sec. 638. A su vez, a COSSEC se transfirieron las funciones y poderes de la Oficina del Inspector de Cooperativas.[11] Art. 15, Ley de la Comisión de Desarrollo Cooperativo, 23 LPRA sec. 639.

**En ese sentido, a COSSEC se le designó como el organismo fiscalizador de todo tipo de cooperativas. Art. 4(d)(10)(a), Ley de la Corporación de 2001, 7 LPRA sec. 1334b. No obstante, se dispuso que dicha autoridad debía ejercitarse "reconociendo la diferencia en el alcance y ámbito de la fiscalización de entidades cooperativas no financieras".** *Íd.*

Finalmente, cabe destacar que la incorporación activa del movimiento cooperativo puertorriqueño en los procesos de formulación e implementación de política pública tuvo el

---

[11] También se transfirieron a COSSEC las funciones y poderes de la Administración de Fomento relacionadas a la fiscalización, supervisión y liquidación de entidades cooperativas. Art. 14, Ley de la Comisión de Desarrollo Cooperativo, 23 LPRA sec. 638.

propósito de reducir la dependencia de las cooperativas en las acciones gubernamentales. Art. 2, Ley de la Comisión de Desarrollo Cooperativo, 23 LPRA sec. 625. Esto tuvo la finalidad de que, eventualmente, el propio movimiento cooperativo asumiera el pleno control del desarrollo de las cooperativas. *Íd.*

C.

**Para culminar nuestra exposición del derecho, debemos señalar que el proceso de incorporación de cooperativas de tipos diversos que rige en la actualidad es el que se encuentra codificado en la Ley General de Cooperativas de 2004,** *supra*, **y que previamente discutimos al estudiar el referido estatuto legal. La única diferencia, que trajo consigo la Ley de la Comisión de Desarrollo Cooperativo,** *supra*, **con la creación de CDCOOP, es que es dicha última entidad, y no la Administración de Fomento, el ente encargado del proceso de incorporación de cooperativas de tipos diversos en nuestra jurisdicción. Art. 4.2, Ley General de Cooperativas de 2004, 5 LPRA 4402.**

Así pues, las cláusulas de incorporación y el reglamento se envían a CDCOOP para su evaluación. Art. 5, Ley General de Cooperativas de 2004, 5 LPRA sec. 4410. Si ésta última aprueba tales documentos, deberá someter las cláusulas al Secretario de Estado dentro del término prescriptivo de cuarenta y cinco (45) días hábiles contados desde la fecha de radicación. Art. 5.1, Ley General de Cooperativas de 2004, 5 LPRA sec. 4411. Ahora bien, si se niega a ello, por entender

que no se cumplen con los requisitos que dispone la ley, deberá justificar su decisión y notificar a las personas interesadas dentro del referido término. Art. 5.2, Ley General de Cooperativas de 2004, 5 LPRA sec. 4412.

En caso de que CDCOOP no descargue sus funciones dentro del término dispuesto, se podrán someter las cláusulas directamente al Departamento de Estado. Art. 5.3, Ley General de Cooperativas de 2004, 5 LPRA sec. 4413. En tales ocasiones, el Departamento de Estado registrará las mismas y expedirá el correspondiente certificado de incorporación, siempre que determine que la mencionada documentación cumple con los requisitos de la ley. *Íd.*

**Ahora bien, el estatuto es claro al dictar que la entidad quedará debidamente constituida como cooperativa cuando el Departamento de Estado registre sus cláusulas y emita el correspondiente certificado de registro. Art. 5.4, Ley General de Cooperativas de 2004, 5 LPRA sec. 4414. De igual forma, se establece que ésta podrá comenzar sus operaciones de forma oficial cuando el Departamento de Estado haya registrado sus cláusulas. Art. 5.5, Ley General de Cooperativas de 2004, 5 LPRA sec. 4415.**

Por otra parte, COSSEC se convirtió en la agencia que viene obligada a otorgar el "permiso escrito a toda cooperativa que hubiese cumplido con los requisitos de [la Ley General de Cooperativas de 2004] para que pueda comenzar

sus operaciones". Art. 37.0, Ley General de Cooperativas de 2004, 5 LPRA sec. 4645.[12]

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de la controversia ante nos.

IV.

Como mencionamos anteriormente, en la causa de epígrafe, Legal Coop aduce que la determinación de COSSEC de denegarle el permiso de operación por incumplir con los requisitos establecidos en la ley constituyó un acto *ultra vires*. A su entender, la Ley General de Cooperativas de 2004, *supra*, no le reconoce a COSSEC discreción para revocar el criterio de CDCOOP y del Departamento de Estado en cuanto a que una entidad cumple con los requisitos para incorporarse como cooperativa de tipo diverso y, consecuentemente, pueda comenzar operaciones. Le asiste la razón.

Y es que, de la normativa antes expuesta surge con meridiana claridad que una entidad queda constituida como cooperativa de tipo diverso cuando, previa recomendación del CDCOOP, el Departamento de Estado registra sus cláusulas y emite el correspondiente certificado de registro. Desde ese

---

[12] Cabe mencionar que el estatuto contempla el concepto de cooperativa en formación. Específicamente, se dispone que una cooperativa en formación es aquella que, habiendo iniciado el procedimiento de incorporación -- entiéndase, habiendo presentado los documentos constitutivos -- todavía no aparece inscrita en el Departamento de Estado. Art. 3.7, Ley General de Cooperativas de 2004, 5 LPRA sec. 4394. Dicho periodo de formación no puede ser mayor de un (1) año, -- salvo que medie justa causa --, contado desde la fecha de la radicación de las cláusulas y el reglamento ante CDCOOP. *Íd.* Durante el mismo, la cooperativa en formación podrá realizar actos frente a terceros. *Íd.* No obstante, los incorporadores serán responsables personal y solidariamente por tales actos. *Íd.* Notemos que esta última disposición indica que una cooperativa nace o se forma tan pronto se efectúa su inscripción en el Departamento de Estado. En otras palabras, la facultad para operar como cooperativa no se supedita al permiso de operación que concede COSSEC.

entonces, la cooperativa puede comenzar a operar. Así se desprende de un análisis armonioso del desarrollo de la Oficina del Inspector de Cooperativas y los cambios en política pública generados por la Ley General de Cooperativas de 2004, *supra*, y la Ley de la Comisión de Desarrollo Cooperativo, *supra*, y ello fue lo que sucedió aquí.

Concluir lo contrario sería, a todas luces, un contrasentido a la política pública implementada mediante la Ley de la Comisión de Desarrollo Cooperativo, *supra*. Ello, pues colocaríamos a COSSEC, -- una entidad subordinada --, en una posición superior a CDCOOP, -- el ente gubernamental principal en materia de cooperativas --. Consecuentemente, mantendríamos la inconexión y duplicidad de labores entre los organismos asociados al cooperativismo, problema que intentó mitigar nuestra Asamblea Legislativa mediante la aprobación de este estatuto.

Así pues, somos del criterio que COSSEC no tiene injerencia en los procesos iniciales relacionados a la incorporación de una cooperativa de tipo diverso. Menos aún cuando esa autoridad aparentemente emana de un Reglamento -- entiéndase, el Reglamento Núm. 7108 de la Oficina del Inspector de Cooperativas -- que, a todas luces, contraviene la política pública claramente establecida en la Ley de la Comisión de Desarrollo Cooperativo, *supra.*

Más bien, la autoridad de COSSEC sobre este tipo de cooperativas se limita a su regulación y fiscalización luego de incorporadas. Dicha fiscalización, enfatizamos, deberá

realizarse tomando en consideración las diferencias entre estas cooperativas y las de naturaleza financiera, como lo son las cooperativas de ahorro y crédito. Y, en efecto, de COSSEC encontrar que existe alguna violación a las disposiciones legales aplicables, nada impide que tome las medidas que las leyes cooperativistas le proveen para remediar una situación de tal naturaleza.

Cabe mencionar, por último, que, en esta ocasión, y similar a como lo hizo el foro apelativo intermedio, no atendemos el asunto del uso de los anticipos de dividendos para remunerar a los socios trabajadores por sus labores. Lo anterior, por entender que ello debe ser resuelto, en primera instancia, por el ente experto en materia de cooperativas, entiéndase, CDCOOP.[13] Concluimos esto pues la Ley General de Cooperativas de 2004, *supra*, no dispone de esta interrogante de forma clara.[14] Una vez esa normativa legal o reglamentaria esté clara, COSSEC podrá encargarse de velar por su cumplimiento.

---

[13] Cabe destacar que la doctrina de jurisdicción primaria dispone cuál foro, si el judicial o el administrativo, debe atender de forma inicial determinada controversia. *Municipio Arecibo v. Municipio Quebradillas*, 163 DPR 308, 326 (2004). Una de las vertientes de esta doctrina se manifiesta cuando el foro judicial y el administrativo comparten la facultad para atender un asunto. *CBS Outdoor v. Billboard One, Inc.*, 179 DPR 391, 405 (2010). **En tales instancias, los tribunales podrían ceder su intervención para que la controversia sea considerada por las agencias administrativas.** *Íd.* Esto se hace en virtud de la deferencia que merecen dichas entidades por su preparación, especialización y pericia sobre determinados temas. *Íd.*

[14] Recordemos que, en lo relacionado a este caso, COSSEC fundamentó la denegatoria del permiso para operar por entender que la Ley General de Cooperativas de 2004, *supra*, no permite adelantar dividendos como parte de la compensación de los socios trabajadores. **No obstante, no encontramos en dicha ley una prohibición al respecto.**

V.

Por los fundamentos antes expuestos, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones, la cual confirma la determinación administrativa de la Junta de Directores de COSSEC. En consecuencia, se ordena a COSSEC a otorgar el permiso de operación en cuestión a Legal Coop. A su vez, el asunto del uso de los anticipos de dividendos para remunerar a los socios trabajadores se remite al trámite administrativo para que CDCOOP ausculte si la Ley General de Cooperativas de 2004, *supra*, y la política pública del cooperativismo puertorriqueño permite tal práctica.

Se dictará *Sentencia* de conformidad.

Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Trabajo Asociado
de Servicios de Asesoría y
Asistencia Legal y Notarial
(Legal Coop.)

    Peticionario

      v.                  CC-2023-0158     *Certiorari*

Corporación Pública para la
Supervisión y Seguro de
Cooperativas de Puerto Rico
(COSSEC), representado por su
Presidenta Ejecutiva Mabel
Jiménez Miranda

    Recurridos

SENTENCIA

En San Juan, Puerto Rico a 12 de abril de 2024.

Por los fundamentos expuestos en la Opinión que antecede, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones, la cual confirma la determinación administrativa de la Junta de Directores de COSSEC. En consecuencia, se ordena a COSSEC a otorgar el permiso de operación en cuestión a Legal Coop. A su vez, el asunto del uso de los anticipos de dividendos para remunerar a los socios trabajadores se remite al trámite administrativo para que CDCOOP ausculte si la Ley General de Cooperativas de 2004, *supra*, y la política pública del cooperativismo puertorriqueño permite tal práctica.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco disiente con Opinión escrita.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Cooperativa de Trabajo Asociado de Servicios de Asesoría y Asistencia Legal y Notarial (Legal Coop.)<br><br>    Peticionario<br><br>       v.<br><br>Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC), representado por su Presidenta Ejecutiva Mabel Jiménez Miranda<br><br>    Recurridos | CC-2023-0158 |  |

Opinión Disidente emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 12 de abril de 2024.

Disiento de la determinación a la cual arribó una Mayoría de este Tribunal. No coincido en que la otorgación de un permiso de operación por parte de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC) a una cooperativa de tipo diverso es automática una vez la entidad queda inscrita en el Departamento de Estado. La incorporación y la otorgación del permiso de operación son procesos independientes y necesarios para que una cooperativa pueda comenzar sus operaciones.

## I

El 17 de junio de 2020, el Departamento de Estado registró y emitió el certificado de incorporación de la Cooperativa de Trabajo Asociado de Servicios de Asesoría y Asistencia Legal y Notarial (Legal Coop.). Según surge de su propio reglamento, Legal Coop. es una cooperativa de trabajadores, dedicada a la prestación de servicios legales y notariales a personas que contraten sus servicios profesionales en Puerto Rico; con especial interés de prestar servicios a empresas cooperativas y de la economía solidaria. En esa misma fecha, la Comisión de Desarrollo Cooperativo de Puerto Rico (CDCOOP) envió a COSSEC copias de las Cláusulas de Incorporación, del Reglamento y el Certificado de Incorporación de Legal Coop. Lo anterior con el fin de que COSSEC concediera el permiso de operación.

Así las cosas, el 9 de julio de 2020, COSSEC solicitó a Legal Coop. varios documentos para poder realizar su evaluación antes de expedir el permiso. Entre estos, evaluó la contabilidad de Legal Coop, mediante el estudio de los estados financieros, el auxiliar de acciones y estados de cuentas.

Como parte de su evaluación, el 10 de mayo de 2021, COSSEC indagó sobre una cuenta bancaria de Legal Coop. denominada "*Advance to Members*" con un balance de $140,783.72. Legal Coop. explicó que, como parte de sus operaciones, realizaba anticipos de dividendos como compensación del trabajo realizado por los socios que

ofrecían servicios legales en la Cooperativa. El 29 de junio de 2021, COSSEC notificó que Legal Coop. incumplía con la Ley General de Cooperativas de 2004, *infra,* dado a que el estatuto no permite que se realicen adelantos de dividendos a sus socios. Siendo ello así, le otorgó un permiso provisional, por un término de treinta (30) días, para que la Cooperativa realizara las correcciones a su contabilidad en cumplimiento con la Ley de General de Cooperativas de 2004, *infra,* y conforme a los Principios de Contabilidad Generalmente Aceptados.

Insatisfecha con la determinación, Legal Coop. comenzó un proceso de reconsideración y revisión administrativa. A través de ese proceso, del cual omitimos los pormenores, la Cooperativa arguyó, primeramente, que no incumplió con la Ley General de Cooperativas de 2004, *infra,* en vista de que la ley diferenciaba los trabajadores-socios y los trabajadores-no socios, precisando que se permite el mecanismo de anticipos como método de remuneración para los primeros. Además, argumentó que la Ley General de Cooperativas de 2004, *infra*, no le confiere a COSSEC injerencia para ir en contra de la determinación de CDCOOP respecto a que una entidad cumplió con los requisitos para constituirse e incorporarse como una cooperativa. Luego de que el Tribunal de Apelaciones confirmó la negativa de COSSEC, mediante una Sentencia, emitida el 17 de noviembre de 2022, Legal Coop. recurrió ante este Tribunal.

## II

El ordenamiento cooperativista vigente en Puerto Rico ha sido modificado y atemperado por el poder legislativo en varias ocasiones. En particular a la controversia de autos, se ha desplazado en otras agencias las funciones que ostentaba la Oficina del Inspector de Cooperativas en el proceso de incorporación de las cooperativas de tipo diverso y a la fiscalización y regulación de estas una vez incorporadas. Actualmente, a CDCOOP se le ha delegado la función de llevar a cabo el procedimiento de organización e incorporación de una cooperativa de tipo diverso y a COSSEC el de fiscalizar y regularlas.

CDCOOP está encargada de implantar el Capítulo 5 de la Ley Núm. 239-2004, conocida como Ley General de Sociedades Cooperativas de Puerto Rico de 2004, 5 LPRA secs. 4410-4416, al recibir, examinar y, posteriormente, someter al Departamento de Estado los documentos constitutivos de una cooperativa. Este proceso culmina con la cooperativa debidamente constituida "cuando el Departamento de Estado registre y emita el correspondiente certificado de registro". Art. 5.4, Ley Núm. 239-2004, 5 LPRA 4414. El Artículo 5.5, 5 LPRA sec. 4415, dispone que, una vez el Departamento de Estado haya registrado sus cláusulas de incorporación, la cooperativa podrá comenzar sus operaciones oficialmente.

Por su parte, bajo el Capítulo 37 de la Ley Núm. 239-2004, COSSEC tiene que "velar por que toda cooperativa cumpla con sus cláusulas de incorporación, su reglamento interno y las disposiciones de esta Ley". Art. 37.1, Ley Núm. 239-2004, 5 LPRA sec. 4646. Para lograr este objetivo, el Artículo 37.0, 5 LPRA sec. 4645, dispone que "[COSSEC] deberá otorgar un permiso escrito a toda cooperativa que hubiese cumplido con los requisitos de esta Ley para que pueda comenzar sus operaciones". Por otra parte, la entidad queda facultada a "examinar por lo menos una (1) vez al año las auditorías realizadas sobre las operaciones de toda cooperativa incorporada y funcionando en Puerto Rico. La auditoría podrá realizarla un auditor contratado por la cooperativa, pero el Inspector podrá revisar la auditoría y realizar todos los exámenes relacionados que considere pertinentes". Art. 37.2, Ley Núm. 239-2004, 5 LPRA sec. 4647.

Por otra parte, mediante la Ley Núm. 247-2008, conocida como Ley Orgánica de la Comisión de Desarrollo Cooperativo de Puerto Rico, 23 LPRA 625 *et seq*, COSSEC se convirtió en un brazo operacional de CDCOOP. Esto con el fin de que la política pública cooperativista sea aplicada de forma uniforme. Aun así, COSSEC mantiene su autonomía operacional. Art. 9, Ley Núm. 247-2008, 23 LPRA sec. 632. En lo relevante al caso de autos, el Artículo 13 de la Ley Núm. 247-2008, 23 LPRA sec. 637, dispone que la Junta Rectora de CDCOOP tiene la facultad de "resolver posibles inconsistencias entre las normas, reglamentos, procedimientos, cartas circulares o

normativas de las entidades adscritas, tanto en su aprobación, aplicación e interpretación, y la política pública de desarrollo del Cooperativismo" y al igual que recibir de partes interesadas "planteamientos de posible inconsistencia de política pública, cuya petición deberá ajustarse a las normas que para esos fines defina por reglamento la propia entidad".

### III

En el caso de autos, Legal Coop., con el aval de CDCOOP, quedó debidamente incorporada el 17 de junio de 2020, cuando el Departamento de Estado registró a la Cooperativa y emitió el certificado de incorporación. **El hecho que posteriormente, el 18 de abril de 2022, COSSEC determinó que Legal Coop. incumplía con los requisitos establecidos en la ley al mantener un sistema de contabilidad inadecuado, al reconocer el adelanto de dividendos antes del cierre del año fiscal, no tiene efecto alguno sobre la evaluación de los documentos constitutivos de la Cooperativa por parte de CDCOOP y su registro en el Departamento de Estado.** En esa etapa COSSEC estaba actuando conforme al Capítulo 37 de Ley Núm. 239-2004, *supra*, como ente regulador.

Asimismo, pesa sobre mi criterio el hecho de que la deficiencia señalada por COSSEC no podía surgir de los documentos constitutivos (Cláusulas de Incorporación y el Reglamento de la Cooperativa) sometidos a CDCOOP para la incorporación. COSSEC denegó otorgar el permiso al surgir un desacuerdo sobre si la Ley General de Sociedades

Cooperativas reconocía el adelanto de dividendos antes del cierre del año fiscal. Durante el examen dirigido a otorgar el permiso de operación COSSEC solicitó documentación adicional que no estuvo disponible para CDCOOP, cuando este evaluó los documentos de incorporación. La determinación negativa de COSSEC surge de su indagación sobre una cuenta por cobrar denominada "Advance to Members" de la Cooperativa, datos que solo pueden surgir de un estudio de la contabilidad de Legal Coop.

**Nada de lo dispuesto en los Capítulos 5 y 37 de la Ley Núm. 239-2004,** *supra,* **o en la Ley Núm. 247-2008,** *supra,* **implica que COSSEC tiene injerencia sobre el proceso de incorporación de una cooperativa.** La otorgación del permiso de operación es un proceso independiente y distinto, cuyas disposiciones no han sido objeto de enmienda. El Capítulo 37 de la Ley Núm. 239-2004, *supra*, delega a COSSEC la función de ente regulador de todas las cooperativas de tipo diverso y autoriza la auditoria de estas entidades. Soy del criterio que el proceso de incorporación no predispone a COSSEC a otorgar automáticamente el permiso. Tampoco me persuade concluir que COSSEC tiene que otorgar un permiso para operar antes de poder señalar deficiencias con el sistema de contabilidad de una cooperativa.

Por lo cual, los procesos de incorporación y de obtención del permiso de operación son distintos e indispensables para que una cooperativa pueda operar en Puerto Rico. Al concluir el primero, la cooperativa queda

constituida con su propia personalidad jurídica. A través del segundo, la cooperativa obtiene el aval de que realiza sus actividades en consecución de sus fines según lo permitido por las leyes. Si una cooperativa entiende que COSSEC actuó contrario a la política pública de desarrollo del Cooperativismo cuando denegó expedir un permiso de operación, esta podrá recurrir a CDCOOP, hecho que no sucedió en la controversia que hoy atendemos. Siendo ello así, confirmaría la *Sentencia* que emitió el Tribunal de Apelaciones en el caso de autos.

Mildred G. Pabón Charneco
Jueza Asociada