ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| YOLANDA BAJANDAS GARCÍA<br><br>APELANTE<br><br>V.<br><br>COOPERATIVA DE AHORRO Y CRÉDITO DE LOS EMPLEADOS DEL CENTRO MÉDICO DE PUERTO RICO<br><br>APELADA | KLAN202400748 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Sala: 801<br><br>Caso Núm. SJ2022CV09597<br><br>Sobre: DESPIDO INJUSTIFICADO |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Álvarez Esnard, y la jueza Prats Palerm

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de octubre de 2024.

Comparece la señora Yolanda Bajandas García (en adelante, la señora Bajandas García) mediante un recurso intitulado *Apelación*. Nos solicita la revocación de una *Sentencia*, emitida el 11 de junio de 2024 y notificada el día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el referido dictamen, el foro primario desestimó sumariamente la reclamación sobre despido injustificado instada por la parte apelante. Particularmente, resolvió que su destitución respondió al proceso de liquidación de la Cooperativa de Ahorro y Crédito de los Empleados del Centro Médico de Puerto Rico (en adelante, CentroCoop) de conformidad con la Ley de Sociedades Cooperativas de Ahorro y Crédito (2002).

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen apelado.

**I.**

El 31 de octubre de 2022, la señora Bajandas García radicó una *Querella* al amparo de la Ley de Procedimiento Sumario de Reclamaciones

Laborales por razón de despido injustificado.[1] En síntesis, alegó que trabajó desde el año 2005 al 2022 en CentroCoop donde fungió como presidenta ejecutiva. Según relató la querellante-apelante, el 26 de enero de 2022, el señor Pedro Roldán, quien es ejecutivo del área de apoyo técnico y supervisión de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (en adelante, COSSEC), acudió a la oficina central de la cooperativa mencionada. Aseveró que ese día éste le entregó un documento intitulado *Orden Provisional de Administración a la Junta de Directores de la Cooperativa,* el cual detallaba el estado financiero crítico de dicha institución. Ante tales circunstancias, manifestó que el ejecutivo le expresó verbalmente "Yolanda estás inoperante" sin haberle entregado una carta de renuncia o suspensión. Transcurrido tres (3) meses desde la separación de su cargo sin percibir salario, ésta reclamó $139,131. 91 en concepto de despido injustificado, $13,754.00 por razón de pago de vacaciones y la correspondiente cuantía del 25% en honorarios de abogados.

Ante tales alegaciones, el 14 de noviembre de 2022, CentroCoop presentó la *Contestación a la Querella.*[2] En esencia, adujo que la querellante-apelante ejercía su cargo en virtud de un contrato de servicios profesionales. Por tanto, explicó a la luz de lo anterior que no le aplican las disposiciones de la Ley sobre Despido Injustificado, pues no ejercía su cargo a tiempo completo. Enfatizó que el contrato suscrito entre ambas partes resultó inexistente tras iniciar un proceso de sindicatura bajo las facultades legales delegadas a COSSEC. En vista de las alegaciones esbozadas en su contra, solicitó la desestimación de la reclamación laboral, y a su vez, peticionó la conversión del pleito sumario a uno ordinario. Evaluado lo anterior, el 5 de diciembre de 2022, el foro primario dictó una *Orden*, notificada al día siguiente, en la cual decretó la conversión del pleito sumario a ordinario sin oposición de la parte apelante.

---

[1] Apéndice de la parte apelante, págs. 36-42.
[2] Apéndice de la parte apelada, págs. 1-18.

Luego de una serie de trámites procesales, que no son necesarios pormenorizar, el 1 de abril de 2024, la señora Bajandas García presentó una *Solicitud de Sentencia Sumaria*.[3] En lo pertinente, afirmó que era empleada y no contratista independiente de la cooperativa. Especificó que en el año 2012 CentroCoop pactó un *Acuerdo sobre Administración Compartida* con COSSEC al amparo del Artículo 8.06 de la Ley de Sociedades Cooperativas de Ahorro y Crédito (2002). Puntualizó que el referido acuerdo no incidía en su posición de presidenta ejecutiva, sino que atendía la situación financiera de la institución cooperativista. Por tanto, reiteró que la actuación de suspensión de sus labores y cese del pago de salario constituyó despido injustificado. Expuesto tal escenario, solicitó que el tribunal dictara sentencia sumaria a su favor y concediera los remedios solicitados en su querella.

En respuesta a tal solicitud, el 22 de abril de 2024, CentroCoop sometió su *Oposición a Moción de Sentencia Sumaria y Solicitud de Dictamen Dispositivo a Favor de la Parte Demandada*.[4] Detalló que COSSEC asumió control absoluto de las operaciones de la cooperativa desde el 26 de enero de 2022 con la finalidad de intervenir como ente regulador en su situación económica. Añadió —haciendo referencia a una resolución emitida por COSSEC— que se determinó que la cooperativa debía cerrar de forma total sus operaciones ante la venta de sus activos y pasivos. Por tales circunstancias, aseveró que se tornó inoperante el cargo de presidenta ejecutiva, toda vez que la Junta de CentroCoop dejó de existir. Por consiguiente, solicitó que el tribunal dictara sentencia sumaria a su favor.

Examinados los argumentos de las partes, el 11 de junio de 2024, el foro primario dictó *Sentencia* sumaria, notificada al día siguiente, en la cual declaró *Ha Lugar* la *Oposición*.[5] En lo atinente, formuló las siguientes determinaciones relativa a los hechos incontrovertidos:

1. Centrocoop era una cooperativa dedicada al servicio bancario de ahorro y crédito, creada al amparo de la Ley 255-2002, según enmendada 7 L.P.R.A. §1361 et seq.

---

[3] Apéndice de la parte apelante, págs. 45-72.
[4] Apéndice de la parte apelante, págs. 73-106.
[5] Apéndice de la parte apelante, págs. 107-118.

2. La querellante trabajó por 17 años en calidad de empleada para Centrocoop ocupando el puesto de Presidenta Ejecutiva desde el año 2005, hasta el 26 de enero de 2022.

3. Las funciones de la querellante en Centrocoop eran aquellas establecidas en el Artículo 5.11 de la Ley 255-2002 7 L.P.R.A. §1365 y todas aquellas que determinara la Junta de Directores de dicha institución. 4. Su salario más alto fue para el año 2018 donde devengó un total de $115,143.73 entre sueldos y concesiones.

5. Desde el año 2012 Centrocoop entró en un Acuerdo sobre Administración Compartida con Corporación Pública para la Supervisión y Seguro de Cooperativas (Cossec), al amparo del Artículo 8.06 de la Ley 255-2002 7 L.P.R.A. §1368e y como medida de acción correctiva para atender varios señalamientos relacionados a las finanzas y a los controles internos de Centrocoop.

6. Bajo dicho acuerdo, Bajandas se mantuvo en su posición de presidenta ejecutiva de Centrocoop.

7. El 29 de marzo de 2019, Bajandas aceptó una modificación a sus términos de empleo.

8. El 26 de enero de 2022, el Sr. Pedro Roldán, ejecutivo del Área de Apoyo Técnico y Supervisión de Cossec se personó a la oficina central de Centrocoop, junto con otro personal de dicha institución y entregaron una Orden Provisional de Administración a la Junta de Directores de la cooperativa.

9. Dicha Orden Provisional indicaba que Centrocoop se encuentra en una condición financiera crítica y de insolvencia, por lo que fue colocada bajo la Administración Provisional de Cossec.

10. Desde ese momento, Cossec entró a actuar como síndico administrador de Centrocoop.

11. El Artículo 5 de la Ley 80 – 1976, según enmendada dispone: A los efectos de esta Ley se entenderá por despido, además de la cesantía del empleado, su suspensión indefinida o por un término que exceda de tres (3) meses, excepto en el caso de empleados de industria y negocios estacionales, o la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra. Disponiéndose que los actos dirigidos a inducir o forzar a un empleado a renunciar solamente constituyen un despido cuando la única alternativa razonable que le queda al empleado es la de abandonar el cargo. No basta con cualquier molestia o condición antipática en el empleo, sino que debe tratarse de actuaciones patronales arbitrarias, irrazonables y caprichosas que generen una atmósfera hostil para el empleado que impidan del todo su estadía sana en el trabajo y que sean originadas por un motivo ajeno al legítimo interés del patrono de salvaguardar el bienestar de la empresa. Cuando se trate de vejámenes o humillaciones, éstos deben ser de magnitud sustancial. La mera alegación del empleado de que fue forzado a renunciar no será suficiente para probar o establecer que fue despedido. El empleado deberá demostrar los hechos concretos que establezcan que las gestiones patronales tuvieron la intención de lesionar o perjudicar su condición de empleado.

12. Al 2 de febrero de 2022, la demandante tenía acumuladas 270.00 horas en concepto de vacaciones.

13. La Junta de Directores de Cossec emitió la Resolución Núm. JD-23- 05 del pasado 31 de marzo de 2023, en su sexto párrafo, indica que mediante el contrato de compraventa de activos y asunción de pasivos se venderá, cederá, transferirá y entregará todos los activos y obligaciones a la Cooperativa adquirente.

14. El 29 de junio de 2023, Cossec celebró un contrato de venta de activos y asunción de pasivos entre CentroCoop y la Cooperativa de A/C Jesús Obrero.[6]

Así dispuesto, el foro primario estableció que la señora Bajandas García debió someter su reclamación ante el síndico para la adjudicación de créditos conforme a la Ley de Sociedades Cooperativas de Ahorro y Crédito (2002). De igual modo, resolvió que la querellante no tiene una causa de acción reclamable y no aplica a su caso la normativa de patrono sucesor. En su consecuencia, procedió a desestimar sumariamente el pleito.

Oportunamente, el 27 de junio de 2024, la apelante sometió una *Moción en Solicitud de Reconsideración*.[7] En esencia, señaló que no existe impedimento legal para presentar su reclamación en despido injustificado y vacaciones adeudadas, pese a que CentroCoop enfrentó un proceso disolución. Por consiguiente, indicó que existen controversias genuinas y sustanciales sobre hechos materiales. En vista de ello, argumentó que no debe desestimarse sumariamente su acción legal.

Respectivamente, el 5 de julio de 2024, CentroCoop presentó su *Oposición a Solicitud de Reconsideración,* en la cual reiteró que los trámites de sindicatura de la cooperativa conllevaron la liquidación y el cierre total de las operaciones. En efecto, destacó que COSSEC llevó a cabo ese proceso, por lo que, la orden que emitió es final y permanente más no fue impugnada.[8] Luego de considerar tales argumentos, el 8 de julio de 2024, el tribunal emitió y notificó *Resolución* que declaró *No Ha Lugar* tal solicitud.[9]

Inconforme, el 7 de agosto de 2024, la señora Bajandas García recurrió ante este foro apelativo mediante un recurso intitulado *Apelación.* En su escrito presentó los siguientes señalamientos de error:

---

[6] Apéndice de la parte apelante, págs. 5-7.
[7] Apéndice de la parte apelante, págs. 119-122.
[8] Apéndice de la parte apelante, págs. 19-30.
[9] Apéndice de la parte apelante, pág. 123.

1. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR SUMARIAMENTE ESTA QUERELLA SIN ANTES HABER CONCEDIÓ UN DÍA EN CORTE PARA QUE AMBAS PARTES PRESENTARAN EVIDENCIA A LOS FINES DE DETERMINAR SI LA SRA. BAJANDAS GARCÍA ERA UNA EMPLEADA O UNA CONTRATISTA INDEPENDIENTE.

2. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR SUMARIAMENTE ESTA QUERELLA SIN ANTES HABER CONCEDIDO UN DÍA EN CORTE PARA QUE AMBAS PARTES PRESENTARAN EVIDENCIA A LOS FINES DE DETERMINAR SI LA APELANTE FUE O NO DESPEDIDA INJUSTIFICADAMENTE.

3. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR SUMARIAMENTE ESTA QUERELLA SIN EMITIR UNA ORDEN A LOS EFECTOS DE QUE SE LE PAGARA A LA SRA. BAJANDAS GARCÍA EL BALANCE DE VACACIONES ACUMULADAS AL MOMENTO DE SU DESPIDO INJUSTIFICADO.

4. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LAS DETERMINACIONES DE HECHOS DE [SIC] NO SON SUFICIENTES PARA RESOLVER QUE LA COOPERATIVA DE AHORRO Y CRÉDITO JESÚS OBRERO SE PUEDA CONSIDERAR COMÚN PATRONO SUCESOR.

5. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EN ESTE CASO CUALQUIER RECLAMO QUE CUALQUIER SOCIO O PERSONA TUVIERA DEBÍA SER SOMETIDA AL SÍNDICO LIQUIDADOR CONFORME AL ARTÍCULO 8.11 DE LA LEY NÚM. 255.2002.

Sometido el recurso apelativo, el 20 de agosto de 2024, esta Curia emitió *Resolución* en la cual ordenó a la parte apelada a presentar su oposición dentro del término reglamentario. En cumplimiento con tal decreto, el 4 de septiembre de 2024, CentroCoop sometió su *Alegato en Oposición a Apelación*. Con el beneficio de la comparecencia de las partes, procedemos a discutir el derecho pertinente a la controversia ante nuestra consideración.

**II.**

**A.     Solicitud de sentencia sumaria**

La sentencia sumaria es un mecanismo que permite la ágil disposición de casos sin la celebración de un juicio sujeto a la inexistencia de controversias genuinas de hechos materiales. *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120, 213 DPR ___ (2023); *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022). Específicamente su concesión aplica cuando: (1) no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, (2) contarse con toda la evidencia necesaria y (3) solo restar la aplicación del

derecho. *Banco Popular de Puerto Rico v. Zorrilla Posada*, 2024 TSPR 62, 213 DPR __ (2024). Es decir, un tribunal puede conceder esta moción "cuando surge claramente que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia." *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023); *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).

El propósito de esta alternativa procesal es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, 212 DPR 335, 350; *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335 (2021). A esos fines, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R.36.1, permite que una parte presente una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Es menester explicar que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García*, *supra*, pág. 679.

A tales efectos, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, prescribe los requisitos de forma correspondiente a esta moción y su respectiva oposición. *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico*, 211 DPR 455, 472 (2023). El precitado cuerpo reglamentario fija las formalidades que debe exhibir una petición de tal naturaleza: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra

prueba admisible en evidencia, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a).

De manera similar, la parte opositora de la sentencia sumaria "tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil". *Oriental Bank v. Caballero García, supra*, pág. 680. No debe adoptar "una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación". Íd. Le corresponde, "como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra". *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020). Por tanto, enumerará los hechos materiales de buena fe controvertidos y aquellos sobre los que no media controversia. *Oriental Bank v. Caballero García, supra*., pág. 680. También indicará los párrafos o páginas de la prueba documental que establezcan o impugnen cada hecho. Íd. Asimismo, identificará "los argumentos del derecho aplicable por los cuales no se debe dictar la sentencia", *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 336 (2021).

De cumplirse tales requisitos procesales, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal". *Ramos Pérez v. Univisión*, *supra*, pág. 216; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007). En cuanto a los documentos presentados, estos deben examinarse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 734 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986).

Cónsono con lo anterior, nuestro esquema procesal permite conceder una sentencia sumaria por insuficiencia de la prueba. *Ramos Pérez v. Univisión, supra*, pág. 217; *Pérez v. El Vocero de P.R.,* 149 DPR 427, 447 (1999). Es decir, cuando el reclamante "no cuenta con evidencia suficiente para probar un elemento esencial de su caso sobre el cual tiene el peso de la prueba, procede que se dicte sentencia sumaria para desestimar la demanda". *Medina v. M.S. & D. Química P.R., Inc.*, *supra*, pág. 728. En tal contexto, el promovente debe demostrar que: (1) la vista es innecesaria; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial, y (3) como cuestión de derecho, procede la desestimación de la reclamación. *Ramos Pérez v. Univisión, supra*, pág. 218.

**B.      Estándar de revisión apelativa para la atención de las sentencias sumarias**

Los tribunales revisores nos encontramos en igual posición que el Tribunal de Primera Instancia para determinar si procede una sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos*, *supra.* Ante tal realidad ostentamos el deber de efectuar un análisis a tenor con las siguientes consideraciones:

(1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

(2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

(3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos.

(4) y de encontrar que los hechos materiales realmente están incontrovertidos debe revisar *de novo,* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas*, 199 DPR 664, 679 (2018).

Ahora bien, el foro apelativo solo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González v. M. Cuebas*, 193 DPR 100, 114 (2015). No tenemos facultad para adjudicar hechos materiales en disputa, pues dicha tarea le corresponde al foro primario Íd., pág. 115.

**C.     Ley sobre Despido Injustificado**

El ordenamiento jurídico en Puerto Rico está orientado a la protección de los trabajadores para evitar las prácticas injustas en el empleo. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 903 (2011). En atención a ese principio, la Ley sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a, según enmendada (Ley Núm. 80, en adelante), garantiza que los empleados despedidos sin justa causa reciban la correspondiente indemnización. Los derechos contemplados en esta legislación aplican a los empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin tiempo determinado; (2) reciban una remuneración y (3) sean despedidos de su cargo sin que haya mediado justa causa. *Rivera Figueroa v. The Fuller Brush Co, supra,* pág. 906.

En virtud de esta legislación laboral se procura evitar las actuaciones arbitrarias del patrono e impone remedios económicos para desalentar los despidos injustificados. *Ortiz Ortiz v. Medtronic Puerto Rico Operations*, Co., 209 DPR 759, 770 (2022*); SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 929 (2015). La precitada ley "tiene un fin reparador al proveer a los empleados remedios consustanciales a los daños causados por despidos injustificados". *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 596 (2013); *Beauchamp v. Holsum Bakers of P.R.*, 116 DPR 522, 526 (1985). El remedio que provee tiene el propósito ayudar al trabajador despedido a enfrentar sus necesidades económicas entre tanto se reubica en el mercado laboral. *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*, pág. 428.

Ahora bien, no existe una prohibición absoluta contra el despido de un empleado. *Rivera Figueroa v. The Fuller Brush Co*, *supra*, pág. 904. Al respecto, el Artículo 2 de la Ley Núm. 80, *supra*, delimita una serie instancias que justifican tal actuación:

> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento según los cuales se justifica el despido de un empleado. 29 LPRA sec. 185b.

Nótese que la Ley Núm. 80, *supra*, no prescribe la variedad de circunstancias constitutivas de justa causa. *González Santiago v. Baxter Healthcare of Puerto Rico*, 202 DPR 281, 292 (2019); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 930 (2015). Ante tales limitaciones, el Artículo 2 de la precitada legislación requiere esencialmente que el tribunal evalúe si el despido no está motivado por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. 29 LPRA sec. 185b. Véase, también, *González Santiago v. Baxter Healthcare of Puerto Rico*, *supra*, pág. 302.

Una vez el empleado insta una causa de acción bajo la Ley Núm. 80, *supra*, el patrono debe demostrar mediante preponderancia de la prueba que medió justa causa para el despido. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, *supra*, pág. 774; *Rivera Figueroa v. The Fuller Brush Co.*, *supra*, págs. 906–907. Sobre este particular, en *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, págs. 1002-1003, el Tribunal Supremo de Puerto Rico discute la normativa aplicable a aquellos escenarios cuya destitución transcurre por un proceso restructuración:

> La obligación que impone la Ley Núm. 80, supra, de probar efectivamente el proceso de reestructuración, no está sujeta a que se acredite la existencia de un proceso o un plan de reestructuración de una forma particular o específica. O sea, basta con que el patrono demuestre que la acción respondió a una decisión gerencial válida a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad, y así tendrá que acreditarlo. Ello, pues el patrono tiene el derecho a hacer los arreglos o cambios que estime necesarios y convenientes para optimizar sus recursos y aumentar las ganancias de la empresa.

En tales casos le corresponde al patrono demostrar mediante evidencia incontrovertida que la cesantía no fue producto de un mero capricho o una arbitrariedad de su parte, sino que respondió a una reorganización interna motivada por consideraciones de índole económica en función de la disminución en volumen de sus ventas o ganancia. *Zapata-Rivera v. J.F. Montalvo*, *supra*, pág. 430.

**D.     Doctrina de patrono sucesor**

La doctrina del patrono sucesor, procedente del derecho común estadounidense, se incorporó jurisprudencialmente a nuestro ordenamiento para atender aquellas situaciones en que una operación comercial cambia de dueño y es preciso determinar los derechos de los empleados frente al nuevo patrono. *Rodríguez v. Urban Brands*, 167 DPR 509, 514 (2006). Específicamente opera en aquellos casos en los cuales existe un reclamo de un empleado fundamentado en acto u obligación originalmente imputable al patrono predecesor. *Adventist Health v. Mercado*, 171 DPR 255, 267-268 (2007). No obstante, previo a aplicar las consideraciones de esta doctrina, "los tribunales deben, primero, identificar la existencia de una obligación laboral o un acto ilegal imputable al patrono anterior". *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 992. Por ejemplo, no procede su aplicación si el despido constituye una actuación justificada. Íd.

Ahora bien, esta doctrina aplica cuando hay una venta o transferencia de activos o reorganización de un negocio, siempre que haya similitud sustancial en la operación y continuidad en la identidad de la empresa, antes y después del cambio. *Roldán Flores v. M. Cuebas*, *supra*, pág. 682; *Adventist Health v. Mercado*, *supra*, págs. 266-267. En la atención de estos casos, el Tribunal Supremo de Puerto Rico ha reiterado en continuas

ocasiones los factores a considerar para evaluar la existencia de esa similitud y continuidad:

> (1) [L]a existencia de una continuación sustancial de la misma actividad de negocios; (2) la utilización de la misma planta o instalación para sus operaciones; (3) el empleo de la misma, o sustancialmente la misma, fuerza obrera; (4) la conservación del mismo personal de supervisión; (5) la utilización del mismo equipo o maquinaria, y el empleo de los mismos métodos de producción; (6) la producción de los mismos productos y la prestación de los mismos servicios; (7) la retención del mismo nombre, y (8) la operación del negocio durante el período de transición. No obstante, ninguno de esos criterios es de por sí solo determinante. *Segarra Rivera* v. *International Shipping Agency, Inc.*, *supra*, págs. 991-992; *Roldán Flores v. M. Cuebas*, *supra*, pág. 682.

De existir ese escenario, el nuevo patrono sustituye al otro por fusión corporativa o transferencia de activos, por lo que, se estima que asumirá las obligaciones pertinentes contraídas por el anterior. *Adventist Health v. Mercado*, *supra*, pág. 266; *Bruno López v. Motorplan, Inc.*, 134 DPR 111, 117 (1993). Sin embargo, "si el patrono anterior no cometió algún acto ilegal ni contrajo alguna obligación con el empleado reclamante, no es necesario considerar la existencia de los factores para aplicar la referida doctrina". *Roldán Flores v. M. Cuebas*, *supra*, pág. 683.

**E.     Procedimiento de liquidación de cooperativa según establece la Ley de Sociedades Cooperativas de Ahorro y Crédito (2002)**[10]

Como es sabido, el cooperativismo, en su acepción más simple, se refiere a la asociación voluntaria y solidaria de personas que persiguen un fin común. *Cooperativa de Trabajo Asociado de Servicios de Asesoría Legal v. Corporación Pública*, 2024 TSPR 34, 213 DPR ___ (2024); *Cooperativa v. Colón Lebrón*, 203 DPR 812, 821 (2020). Las cooperativas son personas jurídicas privadas de interés social, fundadas en la solidaridad y el esfuerzo propio para realizar actividades económico-sociales, con el propósito de satisfacer necesidades individuales y colectivas, sin ánimo de lucro. Artículo

---

[10] El Artículo 4.40 de la Ley General de Sociedades Cooperativas de Puerto Rico (2004), Ley Núm. 239-2004, según enmendada, dispone que las cooperativas de ahorro y crédito tienen por objeto realizar operaciones de ahorro y crédito y otras operaciones financieras **se rigen principalmente por la Ley de Sociedades Cooperativas de Ahorro y Crédito (2002), Ley Núm. 255-2002, según enmendada.** Advertimos que el precitado cuerpo legal correspondiente al año 2004 enmienda ciertos artículos de la legislación cooperativista del año 2002. Sin embargo, las disposiciones legales citadas en esta *Sentencia* permanecen inalteradas.

3.0, Ley General de Sociedades Cooperativas de Puerto Rico de 2004, Ley Núm. 239-2004, 5 LPRA sec. 4387, según enmendada.

En consonancia con lo anterior, el Artículo 8.06 de la Ley de Sociedades Cooperativas de Ahorro y Crédito (2002), Ley Núm. 255-2002, según enmendada (Ley Núm. 255-2002, en adelante), instaura como política pública el fortalecimiento y la rehabilitación de las instituciones cooperativistas:

> Es política pública del Estado Libre Asociado fortalecer y propiciar el desarrollo de toda cooperativa. De conformidad con la misma, la Corporación procurará identificar de forma oportuna aquellas condiciones de debilidad operacional, financiera o gerencial que requieran acciones correctivas. Una vez identificadas, la Corporación procurará que la cooperativa implante de forma ordenada y diligente las medidas correctivas necesarias que propicien su fortalecimiento y desarrollo, para lo cual podrá utilizar las medidas administrativas y reglamentarias dispuestas en la Ley Núm. 114 de 17 de agosto de 2001, esta Ley y las leyes especiales aplicables. 7 LPRA sec. 1368e.

A esos fines, el precitado artículo dispone que es responsabilidad primaria de los cuerpos directivos o gerenciales de la cooperativa la implementación de las medidas correctivas dispuestas por la Corporación sin menoscabo de sus facultades para la formulación de cargos y la destitución de oficiales, directores y empleados. 7 LPRA sec. 1368e. Al respecto, conviene puntualizar que, el Artículo 1.03(l) de la Ley Núm. 255-2002, *supra*, dispone que "corporación" significa la Corporación Pública para la Supervisión y Seguro de Cooperativas Ahorro y Crédito, entiéndase COSSEC por sus siglas. 7 LPRA sec. 1362(l).

Así pues, COSSEC es el ente responsable de proveer a las cooperativas de ahorro y crédito un seguro contra insolvencia, y, además, de supervisar y fiscalizar sus operaciones, negocios, productos o servicios. *Cooperativa de Trabajo Asociado de Servicios de Asesoría Legal v. Corporación Pública*, *supra*. En virtud de tales facultades, el Artículo 8.08 de la Ley Núm. 255-2002, *supra*, instituye el procedimiento de sindicatura a cargo de esta entidad reguladora para atender los problemas económicos de una cooperativa. Como primer mandato, el inciso dos (2) del referido artículo ordena la celebración de una vista:

(2) La Corporación deberá celebrar una vista antes de emitir una orden para poner a una cooperativa bajo administración en sindicatura. No obstante, la Corporación podrá emitir una orden provisional decretando la sindicatura sin necesidad de celebrar vista, cuando a su juicio la situación de la cooperativa sea de tal naturaleza que esté causando o pueda causar daño irreparable a los intereses de la misma, a los de sus socios o de las personas con intereses o depósitos en la misma. Cuando la Corporación emita una orden provisional de sindicatura, deberá celebrar una vista administrativa dentro de los diez (10) días siguientes a la fecha de notificación de la misma, para determinar si se hace permanente o se revoca. 7 LPRA sec. 1368g(2).

Luego de celebrar la vista, COSSEC ostenta la autoridad legal para intervenir en calidad de administrador a tenor con el Artículo 8.08 incisos tres (3) y cuatro (4) de la Ley Núm. 255-2002, *supra*:

(3) Cuando la Corporación ordene la administración de emergencia o administración en sindicatura de una cooperativa asegurada, la Corporación actuará como administrador interino o síndico, asumiendo los poderes y funciones de la gerencia o de los cuerpos directivos y operando la institución de conformidad con los reglamentos que al efecto se adopten. La Corporación desempeñará sus funciones como síndico administrador a través de sus funcionarios o a través de un tercero contratado. En todo caso, el funcionario o agente representante de la corporación será una persona de integridad y reputación moral intachable con los conocimientos gerenciales, financieros, contables y comerciales que le capaciten para efectuar un proceso de administración interino o de rehabilitación en el plazo más corto posible.

(4) La administración de emergencia no excederá de sesenta (60) días, cuyo plazo podrá prorrogarse por la Junta de Directores de la Corporación. En caso de que la administración de emergencia excediese ciento ochenta (180) días, la intervención en la cooperativa por la Corporación se considerará como una administración en sindicatura, sujeta a lo dispuesto en el inciso (b) de este Artículo. 7 LPRA sec. 1368g(3) y (4).

En esa dirección, el Artículo 8.01(b)(1)(2) de la Ley Núm. 255-2002, *supra*, requiere que se adopte un plan a cargo para la estabilidad y protección inmediata de la cooperativa:

(b)(1) Toda sindicatura tendrá como propósito y objetivo la protección y estabilidad inmediata de la cooperativa y la pronta instalación de nuevos cuerpos directivos y gerenciales. Durante la sindicatura, la Corporación tomará las medidas inmediatas requeridas para salvaguardar la integridad y estabilidad de la institución. El funcionario o agente representante de la Corporación, a quién se designe como agente del síndico, someterá a la Junta de Directores de la Corporación un plan de trabajo que contemplará como mínimo lo siguiente:

(i) medidas extraordinarias tomadas por el agente del síndico;

(ii) medidas pendientes de implementación;

(iii) proceso de designación de nuevos cuerpos directivos y gerenciales;

(iv) plan de rehabilitación financiera;

(v) propuesta de acuerdo de operaciones o memorando de entendimiento; y

(vi) apoyo financiero o técnico que habrá de recibir la cooperativa por otras entidades cooperativas de primer, segundo o tercer grado.

(2) El plan de trabajo del agente del síndico se presentará a la Junta de la Corporación en un plazo que no exceda de ciento veinte (120) días, luego de decretada la sindicatura. De mediar circunstancias extraordinarias, este plazo podrá prorrogarse por la Junta de la Corporación por un período adicional de sesenta (60) días. El plan de trabajo no contemplará contrataciones o la imposición o asunción de obligaciones o gastos extraordinarios que no correspondan al curso ordinario de los negocios de la cooperativa, salvo que sean aprobados por dos terceras (2/3) partes de la Junta de Directores de la Corporación o que estén sujetos a ratificación de una mayoría de la nueva junta de directores de la cooperativa a ser designada, según se dispone más adelante. Una vez aprobado por la Junta de la Corporación, el agente del síndico procederá con su implementación. 7 LPRA sec. 1368g(b)(1) y (2).

En casos extremos, el Artículo 8.10 de la Ley Núm. 255-2002, *supra*, le concede a COSSEC la facultad para ordenar la disolución de la cooperativa cuando:

(a) se encuentre en peligro de insolvencia económica;

(b) se compruebe que el valor real de las acciones se ha reducido en más de un cinco por ciento (5%) de su valor en los libros, luego del estudio económico al efecto;

(c) deje de cumplir con los requisitos necesarios para acogerse al seguro de acciones y depósitos de la Corporación; y

(d) deje de pagar a la Corporación las primas regulares o especiales o de depositar en la misma la aportación de capital requerida por ley. 7 LPRA sec. 1368i.

Ahora bien, el Artículo 8.10 de la Ley Núm. 255-200, *supra*, establece que "antes de proceder a decretar la disolución de una cooperativa, se requerirá que la Corporación, mediante el voto afirmativo de dos terceras (2/3) partes de su Junta de Directores, hará una determinación expresa de que no existen posibilidades para la rehabilitación de la cooperativa". 7 LPRA sec. 1368i. En atención a tales circunstancias, "[c]ualquier socio o persona que tenga una reclamación contra una cooperativa en proceso de liquidación deberá presentarla ante el síndico liquidador dentro de los noventa (90) días siguientes de la fecha de publicación del aviso de disolución". 7 LPRA sec. 1368j(d). Por último, el Artículo 8.11(d) de la precitada ley permite la presentación de una solicitud de nulidad del procedimiento de liquidación ante el Tribunal de Primera Instancia:

Igualmente, toda persona que tenga intención de iniciar una acción legal con el fin de impedir o anular el procedimiento de liquidación de una cooperativa deberá presentar la acción correspondiente ante la Sala del Tribunal de Primera Instancia del lugar de su residencia, dentro de los treinta (30) días siguientes a la fecha de publicación del aviso de disolución. El peticionario notificará dicha acción a la Corporación, con copia de su petición de anulación. 7 LPRA sec. 1368j(d).

**III.**

En su escrito apelativo, la señora Bajandas García señala que incidió el Tribunal de Primera Instancia al resolver sumariamente la desestimación de su caso. Particularmente contiende que el foro primario debió considerar que en CentroCoop fungía en calidad de empleada y no como contratista independiente. Por tanto, sostiene que corresponde evaluar su caso a la luz de la doctrina de patrono sucesor, toda vez que se ha mantenido la continuidad del negocio adquirido. A su vez, asevera que CentroCoop no acreditó el cumplimiento del trámite establecido en la Ley de Sociedades Cooperativas de Ahorro y Crédito (2002) respecto al aviso para instar la causa de acción en el proceso de liquidación. En vista de lo anterior, reitera que corresponde revocar la sentencia cuestionada, pues tiene una causa de acción a su favor en torno a despido injustificado.

En respuesta a tales alegaciones, CentroCoop aduce que la Junta de Directores de COSSEC emitió *Resolución* (JD-23-05), fechada el 31 de marzo de 2023, en la cual decretó que la cooperativa no se podría rehabilitar. A raíz de tales circunstancias, explica que se autorizó la venta de sus activos y pasivos. Así las cosas, señala que el puesto de la querellante-apelante quedó inexistente. En torno a la teoría de patrono sucesor, discute que no aplica tal doctrina pues se disolvió la cooperativa. De igual modo, alega que la parte apelante debió presentar el argumento de nulidad del proceso de liquidación dentro del término de treinta (30) días ante el foro primario según establece la Ley de Sociedades Cooperativas de Ahorro y Crédito (2002). Ante la inobservancia de este proceder, arguye que tal planteamiento resulta tardío. Por tanto, solicita la confirmación del dictamen apelado.

Luego de revisar sosegadamente el expediente ante nuestra consideración, disponemos que el foro primario no incidió al desestimar

sumariamente la acción legal presentada por la señora Bajandas García. No identificamos la existencia de un error que nos motive a revocar al tribunal sentenciador. Ante la inexistencia de hechos en controversia, resolvemos que la destitución de la apelante respondió al proceso de liquidación de la cooperativa a tenor con la Ley Núm. 255-2002, *supra*. Veamos.

Nuestro estado de derecho nos coloca en igual posición que el Tribunal de Primera Instancia para examinar si procede desestimar sumariamente la reclamación en torno a despido injustificado. En la atención de este caso, hemos revisado de *novo* la *Solicitud de Sentencia Sumaria* instada por la parte apelante y la respectiva *Oposición* de la cooperativa apelada*,* así como el material probatorio que acompaña a ambos escritos. Efectuado ese ejercicio, resolvemos que CentroCoop, como parte opositora, cumplió a cabalidad los criterios establecidos en la Regla 36 de Procedimiento Civil, *supra*. Satisfactoriamente demostró que no existen hechos en controversias que impidan acoger la vía sumaria y resolver a su favor. Por tanto, ante la inexistencia de hechos controvertidos, tenemos facultad para aplicar el derecho imperante a los hechos previamente expuestos.

A los fines de sustentar nuestro dictamen, nos corresponde reseñar las circunstancias particulares de este recurso. El contexto del caso se remonta una situación financiera adversa experimentada por CentroCoop. En atención a este problema, el 21 de febrero de 2012, COSSEC y CentroCoop suscribieron un *Acuerdo sobre Administración Compartida* ante notario.[11] En aquella ocasión ambas entidades pactaron adoptar un plan destinado a la implementación de un mecanismo de administración compartida "con el propósito de fortalecer y desarrollar las estrategias de administración necesarias para el mejoramiento de las condiciones de debilidad operacional que ésta presente".[12]

---

[11] Apéndice de la parte apelante, págs. 5-11.
[12] Apéndice de la parte apelante, pág. 7.

Eventualmente, ante la crítica condición económica, el 29 de marzo de 2019, CentroCoop renovó el contrato laboral de la señora Bajandas García mediante un documento denominado *Enmiendas al Salario y Beneficios Marginales.*[13] En lo pertinente a la controversia, se acordó lo siguiente:

> Las partes entienden que **el presente contrato está basado en la confianza y buena fe,** entendiendo que es uno justo y redactado a nuestra entera satisfacción en ánimo de sacar el máximo provecho a la relación vigente entre las partes y ayudar a reducir los gastos en salarios y mejorar nuestras economías. (Énfasis nuestro).[14]

Prolongada la adversa circunstancia económica, el 26 de enero de 2022, COSSEC, en calidad de ente regulador, decretó una *Orden Provisional de Administración.*[15] Como resultado de su intervención, anunció la celebración de una vista[16], tal como exige la Ley Núm. 255-2002, *supra.*[17] Asimismo detalló los siguientes problemas que aquejaban a la cooperativa:

> (1) Carece de una situación económica y financiera sólida.
>
> (2) No cuenta con controles internos efectivos para la administración de sus asuntos.
>
> (3) No tiene reservas adecuadas.
>
> (4) Su contabilidad no está al día, ni en forma razonablemente correcta para continuar las operaciones.
>
> (5) Se está administrando de forma tal que los socios, las personas o entidades con depósitos en la misma, están en peligro de ser defraudados.[18]

Ese día se nombró al señor William Gerena Muñiz como síndico de la cooperativa a tenor con lo establecido en la *Resolución* dictada por *COSSEC.*[19] También quedó estipulado que él tendría a su cargo la administración de la cooperativa en virtud del Artículo 8.08(a)(3) de la Ley Núm. 255-2002, *supra.*

En respuesta a tal proceso, el 31 de marzo de 2023, COSSEC emitió *Resolución* JD-23-05, en la cual decretó que procedía la disolución de la

---

[13] Apéndice de la parte apelante, págs. 12-14.

[14] Apéndice de la parte apelante, pág. 14.

[15] Apéndice de la parte apelante, págs. 24-33.

[16] Entrada sesenta y uno (61) del Sistema Unificado de Manejo de Caso (SUMAC, en adelante), en la cual consta el referido documento en el Anejo 3 (pág. 4) de la *Oposición* de CentroCoop.

[17] Apéndice de la parte apelante, pág. 31.

[18] Apéndice de la parte apelante, pág. 29.

[19] Entrada sesenta y uno (61) de SUMAC en la cual consta el referido documento en el Anejo 2 (pág. 4) *Oposición* presentada por CentroCoop.

cooperativa a la luz del informe rendido por el síndico.[20] Tras celebrar una reunión extraordinaria con la Junta de Directores, COSSEC dispuso lo siguiente:

> En reunión extraordinaria el 23 de marzo de 2023, la Junta de Directores recibió el Informe del Representante del Síndico que detalla la condición financiera de la Cooperativa. Este informe establece que el incumplimiento con los niveles de capital, las pérdidas acumuladas, fallas de controles internos y merma de la matrícula de socios son algunos de los elementos que afectan considerablemente la rehabilitación de la cooperativa. Además, concluye que la cooperativa tardaría años para poder eliminar las pérdidas totales.[21]

De conformidad con las facultades reconocidas en el Artículo 8.11(d) de la Ley Núm. 255-2002, el ente regulador dispuso que procede "[d]ecretar que la Cooperativa de Ahorro y Crédito Empleados de Centro Médico no es rehabilitable".[22] En efecto, autorizó a la gerencia a diligenciar la venta de activos y asunción de pasivos con otras cooperativas de ahorro y créditos.

Expuestas las particularidades del presente recurso, disponemos que la destitución de la señora Bajandas García respondió a las dificultades económicas que experimentó CentroCoop. Precisamos que su separación del cargo de presidenta, ejercido en virtud de un acuerdo contractual de confianza, no constituyó una actuación ilegal o arbitraria del ente cooperativista demandado. Al contrario, destacamos que dicho cargo quedó inoperante ante el hecho de que COSSEC asumió sus facultades administrativas sobre la cooperativa. En vista de tales circunstancias, concluimos que no ostenta un derecho a remedio legal alguno a tenor con la Ley Núm. 80, *supra*.

Tras establecer que CentroCoop no incurrió en una actuación ilegal o arbitraria, no identificamos el escenario jurídico para aplicar la doctrina de patrono sucesor como nos solicita la apelante. Recordemos, pues que, esta doctrina solo opera en aquellos casos en los cuales existe un reclamo de un empleado fundamentado en acto u obligación originalmente imputable al patrono predecesor. *Adventist Health v. Mercado*, *supra*, págs. 267-268. Por

---

[20] Apéndice de la parte apelante, págs. 43-44.
[21] Apéndice de la parte apelante, pág. 43.
[22] Apéndice de la parte apelante, pág. 43.

tanto, no es necesario evaluar los factores de similitud y continuidad entre la cooperativa sucesora y CentroCoop, pues la doctrina invocada es inaplicable al caso ante nos.

Por último, tal como argumenta la entidad apelada, disponemos que no nos corresponde atender el señalamiento en torno a nulidad del proceso de liquidación de CentroCoop. Adviértase que el Artículo 8.11(d) de la Ley Núm. 255-2002, *supra*, establece lo siguiente:

> Igualmente, toda persona que tenga intención de iniciar una acción legal con el fin de impedir o anular el procedimiento de liquidación de una cooperativa deberá presentar la acción correspondiente ante la Sala del Tribunal de Primera Instancia del lugar de su residencia, dentro de los treinta (30) días siguientes a la fecha de publicación del aviso de disolución. El peticionario notificará dicha acción a la Corporación, con copia de su petición de anulación. 7 LPRA sec. 1368j(d).

Por su trascendencia, sostenemos que la parte apelante debió levantar tal argumento dentro del término de treinta (30) días ante el Tribunal de Primera Instancia siguiente a la fecha del aviso de disolución de conformidad con el precitado artículo. Igualmente puntualizamos que cualquier reclamo que hubiera tenido contra la cooperativa apelada le correspondía presentarlo ante el síndico liquidador designado por COSSEC dentro de los noventa (90) días siguientes de la fecha de publicación del aviso de disolución, según ordena el Artículo 8.11(d), Ley Núm. 255-2002, *supra*.

A la luz de lo discutido, reiteramos que CentroCoop no actuó de manera arbitraria ni incurrió en ilegalidad dentro de los parámetros contemplados en la Ley Núm. 80, *supra*. La destitución de la apelante ocurrió en la atención de la situación económica de la cooperativa, la cual conllevó la intervención de COSSEC en calidad de ente regulador y administrador. A raíz de estas circunstancias, la entidad apelada enfrentó un proceso de sindicatura que concluyó con la disolución de CentroCoop. Examinada detenidamente la totalidad del expediente, resolvemos que en el recurso no obra prueba para controvertir tales hechos. Por tanto, confirmamos el dictamen apelado, toda vez que no incidió el foro primario al desestimar sumariamente la reclamación instada en contra de la cooperativa apelada.

**IV.**

Por los fundamentos que anteceden, *confirmamos* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones